VERONICA PREGO, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendants.

Second Department, May 30, 1989

APPEARANCES OF COUNSEL

*Peter L. Zimroth,* Corporation Counsel (*Stephen J. McGrath* and *Mindy Kallus* of counsel), for appellants.

*Wilner & Associates, P. C. (Diane S. Wilner* and *Lee S. Gayer* of counsel), and *Castor & Karten (Susan Karten* of counsel), for respondent. (One brief filed.)

## OPINION OF THE COURT

BROWN, J. P.

On this appeal we are asked to determine whether CPLR 214-c, which permits commencement of an action within three years of discovery of an injury caused by "the latent effects of exposure to any substance", applies to the HIV/HTLV virus which causes Acquired Immune Deficiency Syndrome (hereinafter AIDS).[1] We conclude that it does.

In July 1982, plaintiff Veronica Prego, a native of Argentina and a 1980 graduate of a Buenos Aires medical school, began working as an unpaid extern at the defendant Kings County Hospital (hereinafter the hospital).[2] On some occasion during the months of November 1982-January 1983 (the plaintiff was unsure of the exact date), while acting as an assistant to defendant Dr. Joyce Fogel, a hospital intern, the plaintiff was pricked by an HIV-contaminated needle. According to the plaintiff, after drawing blood cultures from an AIDS-afflicted patient, Dr. Fogel had negligently placed one of the several needles she had used on the patient's bed, mixed in amongst "gauze, wrappers and other refuse" which it was the plaintiff's job to clean up. The plaintiff immediately consulted the Student Health Administration, and was assured that there were no known cases of a health care worker contracting AIDS by means of a needle stick. Approximately one year later, in the early part of 1984, the plaintiff sustained another needle stick while drawing blood from an AIDS patient. At the time of this incident the plaintiff had been on duty for some 22 or 23 hours, and she alleged that again, as in the first episode, there were inadequate disposal facilities for contaminated needles.

---

1. HIV is an acronym for human immunodeficiency virus. HTLV refers to human T-cell leukemia viruses.

2. Unpaid externships were offered by city hospitals to certain graduates of foreign medical schools to evaluate their abilities. If satisfied with their performance, the hospital would offer them paid internships—as happened in the case of the plaintiff, who was subsequently made an intern in June of 1983, a resident in 1984, and a fellow in gastroenterology in 1986-1987.

In October 1984, the defendant Dr. Sheldon Landesman asked the plaintiff to participate in a study that he was conducting in cooperation with the hospital of the incidence of HIV and/or HTLV antibodies among health care workers. In March 1985, as a result of that study, the plaintiff was informed that she had tested positive for the HIV virus, although she had no symptoms of the disease. In retrospect, however, she indicated that it was possible that she had been afflicted with "AIDS prodrome", since she had been suffering from fatigue, depression and weight loss. At the time, she had attributed these maladies to overwork and marital problems. In November 1987, approximately 2½ years later, the plaintiff developed pneumocystis carinii pneumonia, a characteristic opportunistic infection, and was diagnosed as having AIDS.

On February 11, 1988, the plaintiff served a notice of claim on the municipal defendants, and on or about July 5, 1988 commenced this action. The complaint alleged causes of action sounding in negligence on the part of both Dr. Fogel and the hospital, the latter for failing to provide adequate procedures and equipment for the safe disposal of contaminated needles, breach of fiduciary duty on the part of the hospital and Dr. Landesman for disclosing the results of her AIDS test in March 1985, negligent infliction of emotional distress, and breach of contract for failure to provide a safe workplace. The plaintiff served her amended verified complaint on or about September 6, 1988.

Following service of their verified answers, in which the defendants asserted the affirmative defense of the Statute of Limitations as a bar to the plaintiff's action, the plaintiff moved to dismiss the affirmative defense, arguing that since she had contracted AIDS in November 1987, the commencement of her action in June–July 1988 was well within the 1-year-and-90-day limitation prescribed by General Municipal Law § 50-i and McKinney's Unconsolidated Laws of NY § 7401 (New York City Health and Hospitals Corporation Act § 20 [L 1969, ch 1016, § 1, as amended]). Defendants City of New York, the hospital, New York City Health and Hospitals Corporation and Dr. Fogel opposed the motion and cross-moved to dismiss the complaint on the ground that the action was time barred.[3] They contended that the plaintiff's cause of

---

3. The defendant Landesman, who had only just been served with process, and who was not really affected by the negligence cause of action regarding the initial needle stick, opposed the motion perfunctorily. The

action arose upon the happening of the event upon which her claim was based, i.e., in November 1982-January 1983, when she received her needle stick injury, rather than on the date when her AIDS symptoms developed. Accordingly, the appellants argued, her time to commence an action expired one year and 90 days later, or some time in January-April 1984.

The parties' argument on the motion and cross motion centered on whether the provisions of the 1986-enacted statute, CPLR 214-c, which provides for a discovery rule for determining the date of accrual of causes of action based upon "the latent effects of exposure to any substance" were intended to apply to transmissions of the AIDS virus. The parties supported their contentions with various medical publications and public information documents concerning AIDS. In addition, a question was presented as to whether the plaintiff could have discovered her condition earlier through the exercise of reasonable diligence. However, it was conceded by the appellants at oral argument upon the motion and cross motion that, assuming CPLR 214-c applied, the question of when the plaintiff should have been aware of her condition was an issue to be resolved by the finder of the facts (see, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-c, at 331 [1989 Pocket Part]).

The court (Bernstein, J.) denied both the plaintiff's motion and the appellants' cross motion. In its accompanying memorandum decision (141 Misc 2d 709), it found that the legislative history indicated that CPLR 214-c had been enacted to remedy the injustice which resulted in cases where exposure to noxious agents caused latent injury that did not become manifest for a considerable period of time; and where, as a result of prior case law, which began the running of the Statute of Limitations from last exposure, injured parties were effectively nonsuited before they were aware that they had suffered injury. The court also concluded, based upon, inter alia, the plain wording of the statute, that the evil sought to be remedied by section 214-c included injuries resulting from exposure to natural as well as manufactured substances. We agree that section 214-c is applicable to the facts of this case and affirm the order insofar as it is appealed from by the appellants.

---

plaintiff subsequently withdrew, without prejudice, that branch of her motion which was to strike the Statute of Limitations defense insofar as it pertained to Dr. Landesman.

CPLR 214-c, effective July 30, 1986, provides in pertinent part that: "2. Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." By virtue of subdivision (3) of section 214-c, this discovery rule is extended to actions against municipal appellants (General Municipal Law §§ 50-e, 50-i). For purposes of the statute, the term "exposure" is broadly defined to mean "direct or indirect exposure by absorption, contact, ingestion, inhalation or injection" (CPLR 214-c [1]). There is no dispute as to the fact that the plaintiff was exposed to the AIDS virus within the meaning of CPLR 214-c (1). What is in issue is whether the exposure here was to a "substance" within the intendment of the statute.

On appeal, the appellants urge that had the Legislature intended to include actions arising out of the transmission of HIV, it would have expressly done so. It is the appellants' position that the absence of any definition of the word "substance" in section 214-c creates sufficient ambiguity to require inquiry into legislative intent—although the appellants maintain that such inquiry would be appropriate even were the statute not "ambiguous on its face", since a literal reading of the statute would cause an unreasonable or absurd result. Citing the numerous letters and memoranda submitted in connection with the enactment of section 214-c, and included in the record, the appellants point out that the authors typically referred to the new legislation as the "toxic torts bill," to be applied to "cases involving exposure to toxic substances". They also note that while there were extensive references in this literature to chemical and industrial toxins, as well as to drugs ingested or absorbed without knowledge of their dangerous properties, there were no references at all to claims arising out of "exposure to viruses such as HIV" or other infectious agents. They argue that the fact that the Legislature was aware of the public implications of AIDS when section 214-c was enacted is evidenced by the establishment of the AIDS Institute pursuant to Public Health Law § 2775 et seq. promulgated in 1983, so that, had it wished

section 214-c to apply to cases alleging exposure to HIV, it would have stated as much. In addition, the appellants argue, all of the prior cases that section 214-c was enacted to remedy concerned "drugs, chemicals, industrial materials and particulates—not viruses such as HIV which are transmitted by infected blood".

While it may be true, as the appellants argue, that the plight of industrial workers exposed to toxic substances, or of patients to whom cancer-causing drugs were administered, triggered the enactment of section 214-c, the lawmakers consciously declined to restrict that provision to these categories of persons suffering latent injuries, employing instead the most comprehensive language imaginable, and declining even to offer definitions of what they meant by "substances". In consequence, it would appear that any judicial attempt to restrict the definition to exclude a person who otherwise satisfies the requirements of the provision—i.e., a person whose exposure to a harmful substance has resulted in a latent injury (and an injury which, unlike others concededly covered by the statute, must result in certain and early death) —would do violence to the plain language of the statute, and would create artificial exceptions where it was intended that there be none (McKinney's Cons Laws of NY, Book 1, Statutes § 74).

"A statute must be construed according to the ordinary meaning of its words (*Riegert Apts. Corp. v Planning Bd.,* 57 NY2d 206) and resort to extrinsic matter, such as the legislative history, is inappropriate when the statutory language is unambiguous and the meaning unequivocal (*Giblin v Nassau County Med. Center,* 61 NY2d 67; *Sega v State of New York,* 60 NY2d 183; *New Amsterdam Cas. Co. v Stecker,* 3 NY2d 1). Where, as here, a statute is clear, a court should not attempt to cure an omission in the statute by supplying what it believes should have been put there by the Legislature (*Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth.,* 79 AD2d 516, app dsmd 52 NY2d 895; McKinney's Cons Laws of NY, Book 1, Statutes, § 363) for the judiciary should not substitute its wisdom for that of the Legislature" (*Matter of Daniel C.,* 99 AD2d 35, 41, *affd* 63 NY2d 927; McKinney's Cons Laws of NY, Book 1, Statutes §§ 71, 73).

The statute at issue in the instant case refers to "any substance * * * in any form". "[T]he word 'any' means 'all' or 'every' and imports no limitation" (*Zion v Kurtz,* 50 NY2d 92, 104). Had the Legislature intended to exclude from the stat-

ute's ambit such biological transmitters of latent diseases as the AIDS virus, of which the Legislature was aware at the time of the passage of section 214-c, it could easily have done so by the simple expedient of inserting the appropriate words. Moreover, CPLR 214-c was remedial in nature, requiring that it be liberally construed "to suppress the evil and advance the remedy" intended by the Legislature (McKinney's Cons Laws of NY, Book 1, Statutes §§ 95, 321). Among the many indications of the remedial purpose of section 214-c are its retroactive application and the comprehensiveness of its phrasing. The Supreme Court properly identified the mischief sought to be remedied as the harsh result of the application of the traditional "exposure rule", whereby the plaintiffs exposed to noxious substances could not sue before their illnesses developed, but were barred from suing by the Statute of Limitations by the time their injuries were apparent (e.g., *Thornton v Roosevelt Hosp.*, 47 NY2d 780; *Matter of Steinhardt v Johns-Manville Corp.*, 54 NY2d 1008; *Manno v Levi*, 94 AD2d 556). Since the plaintiff in the instant case is in precisely this predicament, she is a member of the class of persons intended to be benefited by section 214-c.

Beyond their contentions as to the construction of the statutory language, the appellants also urge that this court should not "extend" the scope of section 214-c beyond the bounds of the Legislature's intent, rather leaving for future legislative determination its applicability (or not) to AIDS cases. It is submitted that the Legislature was proceeding one step at a time, addressing the harms caused by industrial poisons as a first priority in promulgating section 214-c, and that it did not foresee the applicability of this rule to cases arising out of HIV exposure. As proof of the Legislature's intent to move in step-wise fashion, the appellants cite section 214-a, permitting a suit to be brought by a plaintiff within one year of discovery of a foreign object left in his body, and section 214-b, providing a two-year Statute of Limitations from discovery of injury caused by exposure to phenoxy herbicides, commonly referred to as Agent Orange. The appellants read section 214-c to be similarly limited to benefit victims of exposure to industrial chemicals and drugs. They argue that since the Legislature did not specifically address the HIV virus, application of section 214-c to such causes of action would constitute an improper judicial extension of the legislation "to a case neither contemplated by this provision nor considered by its drafters". They suggest that the instant

plaintiff is also distinguishable from the persons covered by the statute because, unlike the victims of industrial poisons and drugs, who were unaware that their jobs or their physicians had exposed them to danger, she understood that she was in peril from the first date of her exposure.

In this regard, it is again worthy of note that where the Legislature intended to limit the application of the statute, it did so. For example, medical and dental malpractice were expressly excluded from the application of section 214-c; and in the companion "revival statute" (L 1986, ch 682, § 4) causes of action with respect to only five substances were resuscitated. As cautioned in McKinney's Consolidated Laws of NY, Book 1, Statutes § 74: "when the Legislature by the use of general language has given an act a general application, the failure to specify particular cases which it shall cover does not warrant the court in inferring that the Legislature intended their exclusion. On the contrary, in such cases, if the Legislature did not intend the act to apply to such cases, 'it would have been easy to have said so.' " Since the Legislature was concededly aware of the AIDS epidemic at the time that section 214-c was promulgated in 1986, "it would have been a very simple task to insert the meaningful words" that would have resulted in its exclusion.

Moreover, there is nothing in the legislative memoranda to support the restrictive reading of section 214-c which the appellants advocate. As was noted in *Sega v State of New York* (60 NY2d 183, 191): "While legislative intent is the great and controlling principle * * * it should not be confused with legislative history, as the two are not coextensive". In this same vein, the court in *Matter of Daniel C.* (99 AD2d 35, 41, *affd* 63 NY2d 927, *supra,* quoting from *People v Graham,* 55 NY2d 144, 151), observed: " ' "there is no necessary correlation between what the draftsman of the text of a bill understands it to mean and what members of the enacting legislature understand" ' ". It is clear, on the other hand, however, from the correspondence and memoranda submitted by lawmakers and spokespersons for various special interest groups, that all were agreed that the purpose of section 214-c was to rectify the injustice suffered by persons exposed to noxious substances under the old rule, which obliged them to bring a lawsuit within three years of exposure, whether or not their illnesses had matured, or lose their causes of action. As Senator Stafford, one of the legislation's sponsors, wrote: "Personal injuries * * * caused by the latent effects of expo-

sure to toxic or harmful substances often do not manifest themselves until many years after exposure. Under existing New York law the statute of limitations begins to run from exposure and not from discovery of the injury. * * * The present rule is manifestly unfair. It results in many meritorious claims being time barred prior to the time the injured party could have discovered his or her injury. The present law also encourages needless and premature lawsuits by persons who know they have been exposed to toxic or harmful substance but who have not and may never suffer any injury from that exposure. The unfairness of the existing rule has been widely recognized. * * * Those who are injured by the latent effects of exposure to toxic or harmful substances deserve the same access to our courts for resolution of their claims on the merits. This bill will provide relief to injured New Yorkers whose claims would otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries until after the limitation period had expired" (1986 NY Legis Ann, at 287).

The harm intended to be remedied by the enactment of section 214-c was therefore the nonsuiting of plaintiffs whose exposure to harmful substances resulted in an injury not discoverable within the conventional statutory periods as measured from the date of exposure. A recently exposed plaintiff who recognized that he or she was in danger could not institute a timely suit on the basis of his or her apprehensions alone, since he or she would be nonsuited for lack of an injury, and by the time the injury was apparent, the Statute of Limitations would have expired. Since this is precisely the predicament of the plaintiff at bar, she is, in our view, a member of the class of persons intended to be protected by section 214-c; and the refusal to extend its protection to her on the basis of an arbitrary and artificial distinction between "biological" as opposed to "chemical" "substances", without any support for such a distinction in either the statute or the legislative purpose, would be a manifest injustice. The imposition of such an artificial distinction would further result in the unequal treatment of classes of plaintiffs, in violation of the injunction contained in McKinney's Consolidated Laws of NY, Book 1, Statutes § 147, which counsels: "If there are two possible interpretations of a statute, the court should adopt that which will produce equal results. A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination."

It is worthy of note that New York has been unusually tardy in adopting a "discovery-of-the-injury" rule, having been preceded in this area by more than 40 other States. New York's slowness in enacting such remedial legislation has been frequently deplored *(see, e.g.,* McLaughlin, Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR 214-c, at 329 [1989 Pocket Part]; *Manno v Levi,* 94 AD2d 556, *supra).* Having waited so long for the Legislature to correct the unfairness of the old "date-of-exposure" rule, we are not prepared to begin a retreat from the recently enacted remedial provisions of section 214-c by carving out artificial exceptions where the Legislature saw fit to create none.

Furthermore, most of the memoranda and other documents appended by the appellants to their cross motion are included to illustrate the widespread application of the popular rubric "toxic torts bill" to this legislation and its accompanying "revival statute". The appellants argue that "toxic" refers to industrial poisons, and not to natural or biological agents. In support of this construction, the appellants rely upon the memoranda in the record, as well as upon the definition of this adjective propounded by the court in *Di Marco v Hudson Val. Blood Servs.* (141 Misc 2d 59 [Sup Ct, Bronx County, Aug. 30, 1988]). We disagree.

In the first instance, the word "toxic" is not in the statute. Secondly, Attorney-General Abrams defined "toxic tort cases" as "cases in which injuries caused by exposure to substances are latent" (Attorney-General Robert Abrams' mem for Governor, dated July 21, 1986, re: Senate 9391-A). Such cases are not, therefore, restricted to "product liability cases" or to industrial chemicals, as the appellants suggest. And thirdly, many of the memoranda submitted by the appellants in support of their position are not so much a part of the legislative history—let alone illustrative of legislative intent— as expressions of opinion by special interest groups. Thus, for example, the New York State AFL-CIO understandably voiced concern for industrial employees and other workers exposed to various chemicals, PCBs, PVCs and asbestos. On the other hand, the New York State Nurses' Association applauded the enactment of section 214-c in the following language: "Changing the statute of limitations so that it relates to the date of discovery is essential to make the law relevant to today's environmental and health hazards" (mem of Support from Martha L. Orr, MN, RN, Executive Director, New York State Nurses' Association, re: A 10664, S 9391-A). Evident through-

out the memoranda is a broadly worded concern for persons suffering from "the latent effects of exposure to toxic *or harmful* substances [which] often do not manifest themselves until many years after exposure" (emphasis supplied).

In *Di Marco v Hudson Val. Blood Servs. (supra),* upon which the appellants rely, the plaintiff instituted a suit alleging medical malpractice and negligence against the suppliers of the blood with which he was transfused during cardiac surgery in January 1985. When the plaintiff discovered that he was suffering from AIDS, he instituted suit. Finding that the case was more properly one sounding in negligence rather than medical malpractice, the court ruled that the HIV virus did not fall within the ambit of "toxic" substances contemplated by CPLR 214-c, and dismissed the complaint as time barred. Its analysis reads as follows: "Having held this to be an action that lies in negligence, this court rejects plaintiff's argument that CPLR 214-c is applicable to prevent this action from being time barred. That section allows the three-year Statute of Limitations to commence from the date of discovery of the injury (CPLR 214-c). It was enacted 'to establish a new statute of limitations running from the point of discovery for damages caused by the latent effects of exposure to certain toxic substances or materials' (mem of Off of Ct Adm, reprinted in 1984 McKinney's Session Laws of NY, at 3392). The plain language definition of 'toxic' is '1. of, relating to, or caused by a poison or toxin 2. affected by a poison or toxic 3. poisonous' (Webster's New Collegiate Dictionary [1973 ed]). The court finds AIDS, a virus/disease, does not fall within the ambit of a 'toxic' substance exception created by CPLR 214-c. It is not within the court's providence to so extend this statute. That is for the Legislature" *(Di Marco v Hudson Val. Blood Servs.,* 141 Misc 2d 59, 62).

While it bears repeating that the word "toxic" or "toxin" appears nowhere in the statute itself, and that the scope of section 214-c should not be defined by its popular label, nonetheless, to the extent that "toxic" is the adjectival form of "toxin," the above definition from Webster's would mandate that a "toxin" such as the HIV virus fall within the ambit of CPLR 214-c. A "toxin" is defined as: "a colloidal proteinaceous poisonous substance that is a specific product of the metabolic activities of a living organism and is usu. very unstable, notably toxic when introduced into the tissues, and typically capable of inducing antibody formation" (Webster's Ninth New Collegiate Dictionary 1248 [1985 ed]). The American

College Dictionary (1281 [1966]) gives the following definition: "1. Any of the specific poisonous products generated by pathogenic microorganisms and constituting the causative agents in various diseases, as tetanus, diphtheria, etc. 2. Any of various organic poisons produced in living or dead organisms. 3. Their products, as a venom, etc." To like effect is The Oxford English Dictionary: "A specific poison, usually of an albuminous nature, esp. one produced by a microbe, which causes a particular disease when present in the system of a human or animal body". To the extent, then, that the popular rubric attached to the statute is invoked to circumscribe its application, it is apparent that a "virus" is a "toxin", that the HIV virus is "toxic", and that CPLR 214-c should apply to persons suffering from "the latent effects of exposure" to it, "in any form".

Accordingly, we conclude that the expansive language of section 214-c applies at bar so as to remedy the predicament in which the plaintiff found herself when she discovered that she was suffering from the effects of exposure to HIV/HTLV virus more than one year and 90 days after that exposure occurred. Thus, we hold that the appellants' cross motion to dismiss the complaint as barred by the Statute of Limitations was properly denied and the order is affirmed insofar as appealed from.

LAWRENCE, KUNZEMAN and KOOPER, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.