[616 NYS2d 902]

RHODA G. ROTHSTEIN, as Executrix of ARI ROTHSTEIN, Deceased, Appellant, v TENNESSEE GAS PIPELINE COMPANY, Formerly Known as TENNECO, INC., et al., Respondents, et al., Defendants.

Second Department, October 3, 1994

---

### APPEARANCES OF COUNSEL

*Laurence H. Pearson,* New York City *(Steven E. Angstreich, Michael Coren* and *Amy R. Krouk,* Philadelphia, Pennsylvania *[Levy, Angstreich, Finney, Baldante, Mann & Burkett, P. C.],* of counsel), for appellant.

*Dechert, Price & Rhoads,* New York City *(Norbert F. Bergholtz, Frank J. O'Hara* and *Owen D. Kalt,* and *Fulton, Duncombe & Rowe,* New York City *[Joseph T.C. Hart],* of counsel), for respondents.

### OPINION OF THE COURT

ALTMAN, J.

In 1986 the Legislature enacted a series of tort reforms including CPLR 214-c which adopted a discovery rule for determining the accrual date for a cause of action to recover damages for the latent effects of exposure to any harmful substance. At issue on this appeal is the applicability of CPLR 214-c to an action seeking recovery for an injury which allegedly manifested itself in 1988, but was caused by exposure to an X-ray dye some 40 years earlier. We conclude that the date-of-discovery rule is applicable and the personal injury causes of action are not time barred.

In 1948 or 1949, a radioactive X-ray contrast dye known as Thorotrast was administered to Ari Rothstein, who was then approximately 10 years old. The state of his health was unremarkable until October 1988 when he began experiencing severe abdominal pain. An MRI and CAT-scan suggested that Mr. Rothstein may have developed a hepatoma or malignancy of the liver. He was admitted to the hospital on December 5, 1988, with complaints of severe pain and a diagnosis of internal bleeding. The following day, during exploratory surgery, Mr. Rothstein died from massive internal bleeding. At that time, the existence of cancer was conclusively diagnosed.

In September 1990, Rhoda Garber Rothstein, the decedent's wife, commenced an action against Tennessee Gas Pipeline Company (hereinafter Tennessee), American Cyanamid Company (hereinafter American) and other known manufacturers of Thorotrast or their successors in interest alleging, *inter alia*, that her husband's cancer was caused by the administration of the dye. The verified complaint includes causes of action for negligence, strict products liability, wrongful death and breach of warranty. Tennessee and American successfully moved to dismiss the complaint pursuant to CPLR 3211 (a) (5), contending that the applicable three-year Statute of Limitations began to run when the Thorotrast was administered and, consequently, had expired decades before the complaint was served.

Prior to 1986, New York law provided that a cause of action for personal injuries caused by a toxic or other harmful substance accrued upon exposure to the substance without regard to the date on which the injury was discovered *(see, Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008, *cert denied* 456 US 967; *Thornton v Roosevelt Hosp.,* 47 NY2d 780).* The 1986 legislation remedied the inequity of this long-standing rule by adopting a discovery rule for determining the accrual date of a cause of action based on the latent effects of exposure to any substance (L 1986, ch 682, § 2, adding CPLR 214-c). A separate revival statute, not made part of the CPLR, revived for one year actions based on exposure to five specified substances which were time-barred as of July 30, 1986, the effective date of the statute, or which had previously been dismissed solely because the Statute of Limitations had expired (L 1986, ch 682, §§ 4, 12).

CPLR 214-c provides, in relevant part:

"2. Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier * * *

"6. This section shall be applicable to acts, omissions or failures occurring prior to, on or after July first, nineteen

hundred eighty-six, except that this section shall not be applicable to any act, omission or failure:

"(a) which occurred prior to July first, nineteen hundred eighty-six, and

"(b) which caused or contributed to an injury that either was discovered or through the exercise of reasonable diligence should have been discovered prior to such date, and

"(c) an action for which was or would have been barred because the applicable period of limitation had expired prior to such date."

The statute was specifically made applicable to all actions commenced on or after its effective date of July 30, 1986 (L 1986, ch 682, § 12).

In granting the motion to dismiss, the Supreme Court concluded that, because CPLR 214-c instituted a rule for future application *(see, Hymowitz v Lilly & Co.,* 73 NY2d 487, 514, *cert denied* 493 US 944), it did not apply to the plaintiff's causes of action which were based on an exposure in 1948 or 1949. The revival statute was not applicable because Thorotrast was not one of the five enumerated substances. The court further held that CPLR 214-c (6) was an interim measure which applied the discovery rule to transition cases only, cases where the exposure occurred prior to July 30, 1986, but the cause of action was not yet time barred on that date. To construe CPLR 214-c as reviving all actions which were time barred as of July 30, 1986, the court concluded, would render the revival statute meaningless.

We disagree with the Supreme Court's narrow interpretation of section 214-c. When interpreting a statute, a court should attempt to effectuate the intent of the Legislature *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]; *Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340, 345). Where the language of a statute is clear and unambiguous, the legislative intent may be ascertained from that language and the statute should be construed to give effect to the ordinary meaning of the words used *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b]; § 94; *Eaton v New York City Conciliation & Appeals Bd., supra,* at 345; *Prego v City of New York,* 147 AD2d 165, 170). If the statute is remedial in nature, it should be liberally construed to advance its purpose *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 321; *Prego v City of New York, supra,* at 171).

CPLR 214-c was explicitly made applicable to actions which

were commenced on or after its effective date. The opening phrase of subdivision (2), "[n]otwithstanding the provisions of section 214", introduces a new concept of accrual independent of the traditional limitations of CPLR 214. Subdivision (2) changes the accrual date from the date of exposure to the date when the injury was discovered or, with reasonable diligence, should have been discovered. There is no reference to the date of exposure. Giving this language its clear meaning, the statute is applicable to any action commenced after July 30, 1986, where the discovery postdates the statute, regardless of the date of exposure. The statute therefore established a "prospective only discovery rule" for future application *(see, Hymowitz v Lilly & Co., supra,* 73 NY2d, at 515). It did not create a prospective exposure rule.

Subdivision (6) supports that conclusion by specifically providing that CPLR 214-c is applicable to acts, omissions, or failures occurring prior to July 1, 1986. It then sets forth a three-pronged exception to the general rule of applicability enunciated in the statute. The date-of-discovery rule is not applicable where: (1) the act, omission or failure occurred prior to July 1, 1986, (2) the date of discovery was prior to July 1, 1986, and (3) the action was or would have been barred because the applicable Statute of Limitations had expired prior to that date. For the exception to apply, all three criteria must be satisfied *(see, Silverman v North Shore Energy Savers,* 202 AD2d 571; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 214-c.06).

There is no language in CPLR 214-c limiting the applicability of subdivision (6) to transition cases, as found by the Supreme Court. Nor is there any language in the statute from which such an intention can be implied. Had the Legislature intended to limit the statute in that manner, it would have done so *(see, Prego v City of New York, supra,* 147 AD2d, at 172; *Di Marco v Hudson Val. Blood Servs.,* 147 AD2d 156, 161). Rather, subdivision (6) saves those transition cases where the discovery predated the statute but the cause of action was not time barred as of July 1, 1986, and the action was commenced within three years of discovery but not within three years of exposure. The prospective discovery rule would otherwise have been inapplicable to such cases. At the same time, subdivision (6) explicitly excludes those cases where discovery of the injury predates the statute and the cause of action was also time barred.

Application of CPLR 214-c to a case where both the discov-

ery and the commencement of the action postdates the statute regardless of the date of exposure is in accord with both the literal reading of the statute and its remedial purpose *(see,* 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 214-c.06). The statute was intended to afford relief to individuals whose causes of action were barred before they were even aware of their injuries. As this Court has previously noted, "[a]mong the many indications of the remedial purpose of section 214-c are its retroactive application and the comprehensiveness of its phrasing" *(Prego v City of New York, supra,* 147 AD2d, at 171; *see also, Di Marco v Hudson Val. Blood Servs., supra,* 147 AD2d, at 159-160). New York belatedly adopted a discovery rule after more than 40 other States had already done so *(see, Prego v City of New York, supra,* at 174). To now hold that the statute provides no relief to present victims of prior exposures who have only recently discovered their injuries would defeat the remedial purpose of the statute. As Governor Cuomo stated in his Approval Memorandum, "this measure remedies the injustices suffered by *all* of the currently known categories of victims of exposure to toxic or harmful substances. These *include* persons who have suffered serious injuries as a result of exposure to [the five substances identified in the revival statute]" (1986 NY Legis Ann, at 288 [emphasis supplied]).

The revival statute, in contrast to CPLR 214-c, revived actions which had previously been dismissed or causes of action where the discovery of the injury predated the new discovery rule and were time barred in July 1986 and therefore would not be governed by CPLR 214-c. It is "[a] distinct but related provision, not to be confused with CPLR 214-c and its application in future cases" (Siegel, NY Prac § 40, at 48 [2d ed]). Essentially, the statute revived causes of action based on exposure to the five identified substances which would otherwise have fallen within the exception set forth in CPLR 214-c (6) as well as cases which had previously been dismissed. While CPLR 214-c also revives causes of action which were time barred by the date-of-exposure rule, the focus of section 214-c is to change the accrual date of a cause of action. Its effect is prospective because the cause of action does not arise until the injury is discovered or should have been discovered. The revival statute, on the other hand, revives actions which were dismissed as time barred and causes of action which had lapsed by either the exposure or discovery standard. The revival statute is therefore not rendered meaningless by the application of CPLR 214-c to post-July 1986 discovery cases,

but rather extends rights to yet another class of injured people.

Our conclusion is also supported by the Practice Commentaries to CPLR 214-c. Judge McLaughlin indicates that the date-of-discovery rule is not popular with those "who now become subject to liability many years after they assumed they were safe from judgment" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-c, at 631), a scenario borne out by this case where the date of exposure so far antedates the date of discovery. Lack of popularity and a long lapse in time between the dates of exposure and discovery, however, do not alter the clear meaning of the statute.

Accordingly, we hold that the decedent's personal injury causes of action accrued on the date his injury was discovered or should have been discovered. As his injury was allegedly discovered after July 1, 1986, the causes of action do not fall within the exception enunciated in subdivision (6) of the statute (see, CPLR 214-c [6] [b]; Fusaro v Porter-Hayden Co., 145 Misc 2d 911, affd 170 AD2d 239). Consequently, the Supreme Court erred in granting the motion to dismiss as to the personal injury and wrongful death causes of action. The causes of action for breach of warranty, on the other hand, were properly dismissed. Although not specifically addressed by the parties or the Supreme Court, those causes of action are time barred because they accrued when delivery was tendered (see, Heller v U. S. Suzuki Motor Corp., 64 NY2d 407).

We note that this appeal is from an order granting a motion to dismiss, not a motion for summary judgment, although issue had been joined when the motion was made. The allegations of the complaint are therefore assumed to be true. The ultimate merits of the various causes of action and affirmative defenses have yet to be determined.

KRAUSMAN, J. (dissenting). I disagree with the majority's conclusion that CPLR 214-c operates to revive the plaintiff's long expired causes of action, and, accordingly, would vote to affirm the Supreme Court's dismissal of the complaint insofar as asserted against the respondents.

In New York, an action to recover damages for personal injuries must be commenced within three years from the date of accrual (CPLR 203 [a]; 214 [5]). As a general rule, a cause of action does not accrue until an injury is sustained (see, Snyder

*v Town Insulation,* 81 NY2d 429, 432; *Schmidt v Merchants Desp. Transp. Co.,* 270 NY 287, 300-301). While the general rule is easily stated, its application often presented difficulties for the courts in those toxic tort cases where a plaintiff was exposed to a harmful substance, but did not discover his or her injuries until many years after the initial exposure. In such cases, the Court of Appeals traditionally held that when a toxic substance was introduced into the body, there was an immediate injury, and thus the Statute of Limitations began to run at the time of exposure *(see, Matter of Steinhardt v Johns-Manville Corp.,* 54 NY2d 1008, *cert denied* 456 US 967; *Thornton v Roosevelt Hosp.,* 47 NY2d 780; *Schwartz v Heyden Newport Chem Corp.,* 12 NY2d 212, *cert denied* 374 US 808). Although the date of exposure rule was often criticized because it required "negligence and products liability causes of action to be brought before a plaintiff could reasonably know of their existence and very likely before any medically cognizable injury ha[d] occurred" *(see, e.g., Fleishman v Lilly & Co.,* 62 NY2d 888, 891, [Cooke, Ch. J., dissenting], *cert denied* 469 US 1192), the Court of Appeals concluded that the impetus for departure from the established precedent would have to come from the Legislature *(Fleishman v Lilly & Co., supra; Schwartz v Heyden Newport Chem. Corp., supra,* at 219).

In 1986, the New York State Legislature, recognizing that claims for injuries caused by exposure to toxic substances were often time barred before the harmful effects of the exposure could be discovered, adopted CPLR 214-c to provide that the limitations period in exposure cases begins to run upon discovery of the injury *(see, Enright v Lilly & Co.,* 77 NY2d 377, 383, *cert denied* 502 US 868). As part of its tort reform package, the Legislature also simultaneously enacted a limited provision which expressly revived, for a one-year period, previously time-barred causes of action based on exposure to five toxic substances: diethylstibestrol, more commonly know as DES, tungsten-carbide, asbestos, chlordane, and polyvinylchloride (L 1986, ch 682, § 4). In urging approval of the limited revival statute, former Attorney-General Robert Abrams advised the Governor that "[a]n area of possible concern is the limitation in the bill on the categories of victims whose claims are revived. Ideally, the revival would have applied to all victims regardless of the nature of the chemical to which they were exposed" (Mem to Governor, Bill Jacket, L 1986, ch 682, at 3). However, legislative history indicates that the limited nature of the revival statute was

the " 'result of compromise between the Assembly (which had voted to permit revival for all toxic substances) and the Senate which wanted to limit revival' " *(see, Sandberg v White Labs.,* 871 F2d 3, 5). Moreover, in his memorandum to the Governor, the former Attorney-General noted that the five chemicals enumerated in the revival statute did "cover the groups who are generally known to have been prejudiced under current law", but pointed out that "[a]s other groups are identified, it may be necessary to further amend the revival provisions of this bill" (Bill Jacket, L 1986, ch 682, at 3).

Under the law as it existed prior to the enactment of the tort reform package, it is undisputed that the plaintiff's claim would have accrued upon his exposure to the radioactive X-ray dye Thorotrast in 1948 or 1949, and that any cause of action for damages arising from this exposure would have been time barred by 1952, well over 40 years ago. Thus, we must now consider the question of whether CPLR 214-c may be applied retroactively to revive the plaintiff's claim for injuries allegedly caused by exposure to a chemical which was not included in the simultaneously enacted revival statute.

The majority has accepted the plaintiff's argument that subdivision (6) of the statute, which declares the discovery rule applicable to "acts, omissions or failures occurring *prior to"* July 1, 1986, operates to revive all barred causes of action in which the injury was neither discovered nor discoverable prior to the effective date of the new law. This interpretation of the statute is shared by one commentator, who has opined that "[a] plausible reading" of section 214-c is that "if the injury was not, and could not have been, discovered before July 1, 1986, then the new statute applies" even if "the action was barred by the old New York rule" (McLaughlin, Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR C214-c:6, at 636). However, Professor McLaughlin's commentary goes on to acknowledge that "[t]he entire retroactivity question must also be considered against the backdrop" of the companion revival statute, which resuscitated causes of action which were time barred on July 1, 1986, where they were based on exposure to the five substances enumerated in the statute (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214-c:6, at 637). Moreover, in rejecting a claim that the revival statute violated equal protection because the Legislature designated only five substances for revival, the Court of Appeals described CPLR 214-c,

in contrast to the revival statute, as a "discovery rule for future application" and a "prospective only discovery rule" *(Hymowitz v Lilly & Co.,* 73 NY2d 487, 514, 515, *supra).* While the *Hymowitz* Court was not squarely faced with the issue of whether CPLR 214-c revives certain causes of action not included within the scope of the simultaneously enacted revival statute, in my view, an examination of legislative history and the language of the statute compels the conclusion that CPLR 214-c may not be construed to revive the plaintiff's 40-year-old causes of action.

It is beyond cavil that "the Legislature may constitutionally revive a personal cause of action where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effectuated" *(Gallewski v Hentz & Co.,* 301 NY 164, 174), or where an apparent injustice " 'calls for [a] remedy' " *(Hymowitz v Lilly & Co., supra,* at 514). However, as Judge Cardozo observed in *Hopkins v Lincoln Trust Co.* (233 NY 213, 215), revival is such "an extreme exercise of legislative power", that the "will to work it is not deduced from words of doubtful meaning". To the contrary, an intent to revive time-barred causes of action "must be expressed clearly and unequivocally" *(35 Park Ave. Corp. v Campagna,* 48 NY2d 813, 815).

CPLR 214-c, however, contains no clear and unequivocal language expressly reviving barred causes of action, or indicating, contrary to general rules of statutory construction *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 52), that it is to be applied retroactively rather than prospectively to resuscitate stale causes of action. Thus, as the respondents argue, the most reasonable interpretation of subdivision (6) of the statute, which declares the new discovery rule applicable to "acts, omissions or failures occurring prior to" July 1, 1986, is that it was intended to explain how the new discovery rule should apply to transition cases, in which causes of action are based on exposures which occurred prior to the statute's effective date, but which were not yet time barred. Indeed, as Professor David Siegel explains in his treatise on New York practice, subdivision (6) "addresses how [CPLR 214-c] is to be applied in transition cases", and must not be confused with the distinct but related provision which "revived all previously dead 'exposure' cases, but for only a limited time and for only certain substances" (Siegel, NY Prac § 40, at 48 [2d ed]).

An analogous situation arose in 1980, when the Legislature

amended the Workers' Compensation Law relating to occupational hearing losses, to add a provision that employees whose disablement and knowledge of disablement occurred prior to October 1, 1980, would have six months from that date to file their claims (see, Workers' Compensation Law § 49-bb, amended by L 1980, ch 324). When called upon to interpret the statutory amendment in *Matter of Thomas v Bethlehem Steel Corp.* (63 NY2d 150), the Court of Appeals rejected the plaintiff's claim that the amendment created a six-month grace period which revived previously time-barred claims. Instead, the Court concluded that the six-month grace period was a transitional measure for those with viable claims as of October 1, 1980, who might otherwise have had their remaining time to file claims reduced. In support of its interpretation, the *Thomas* Court emphasized that the language of the amendment did not clearly indicate that it should be applied retroactively, and that an examination of the legislative history did not definitively establish an intent that the statute have unlimited retroactive application. The Court further pointed out that if the amendment were to be given unlimited retroactivity "employers would be exposed to the revival of claims that became stale decades ago", thus opening the door "to hundreds of stale claims the defense of which may, by virtue of the passage of time, now be impossible" *(Matter of Thomas v Bethlehem Steel Corp., supra,* at 154, 155).

As previously noted, CPLR 214-c similarly contains no language expressly indicating that the discovery rule be applied retroactively to revive already barred causes of action. Moreover, as in *Thomas,* there is no clear legislative indication that the statute should be so applied. To the contrary, the fact that the Legislature simultaneously enacted a provision specifically reviving causes of action arising from exposure to five enumerated substances indicates that the Legislature did not intend CPLR 214-c to revive barred causes of action arising from exposure to other substances. The fact that the revival statute represents a compromise between the State Assembly, which had voted to permit revival of tort causes of action arising from exposure to all toxic substances, and the State Senate, which wanted to limit revival, further militates against the conclusion that the Legislature additionally intended CPLR 214-c to act, in effect, as a secondary revival statute.

Further support for the conclusion that the Legislature did not intend CPLR 214-c to act as a revival measure may be

found in the fact that in 1993, the Legislature enacted a provision permitting revival of otherwise time-barred causes of action arising from injury caused by the implantation of silicone gel, silicone breast implants, or dalkon shield intrauterine devices (see, L 1993, ch 419). Had the Legislature contemplated retroactive application of CPLR 214-c as a broad revival statute, the enactment of a second revival statute for a new group of injured plaintiffs would have been unnecessary.

Since neither the language of the statute nor legislative history supports the conclusion that CPLR 214-c revives previously barred tort causes of action, I believe that the Supreme Court properly dismissed the plaintiff's complaint, and would affirm.

O'BRIEN, J. P., and FLORIO, J., concur with ALTMAN, J.; KRAUSMAN and SANTUCCI, JJ., dissent in a separate opinion by KRAUSMAN, J.

Ordered that the order is modified, on the law, by deleting the provision thereof which granted those branches of the respondents' motion which were to dismiss the first, second, third, fourth, and seventh causes of action insofar as asserted against them and substituting therefor a provision denying those branches of the motion; as so modified, the order is affirmed, with costs to the plaintiff.