■ ELLEN FUCHS, Respondent, v NEW YORK BLOOD CENTER, INC., Defendant, and LENOX HILL HOSPITAL, Appellant. [712 NYS2d 519] —Order, Supreme Court, New York County (Lorraine Miller, J.), entered October 13, 1999, to the extent that it denied defendant Lenox Hill Hospital's motion for summary judgment and dismissal of the complaint as time-barred, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

During the course of hospitalization and treatment in 1984 at Lenox Hill, plaintiff was transfused with two units of blood. On November 17, 1987, plaintiff received a three-sentence letter from Maureen McGovern, a registered nurse at Lenox Hill, stating that the hospital was in receipt of information "which may be of importance to your health." In response, plaintiff and her husband met three days later with Nurse McGovern at the hospital and were informed that one of the blood donors had recently tested positive for the Human Immunodeficiency Virus (HIV). At this meeting, plaintiff signed a consent to blood testing for the presence of HIV, at no charge, with assurance of confidentiality. Unfortunately, plaintiff was informed on December 11, 1987 that her lab test was positive for HIV.

The motion court properly held that the controlling Statute of Limitations was CPLR 214-c (2), that the cause of action accrued in December 1987 when plaintiff was fully apprised of her HIV infection, and that the applicable three-year period for suit expired in December 1990. This action, commenced in June 1998, is thus facially time-barred (*Otero v Presbyterian Hosp.*, 240 AD2d 279; *Prego v City of New York*, 147 AD2d 165). Nevertheless, the IAS Court, invoking the doctrine of equitable estoppel, went on to rule that the action was still viable, with triable issues raised. We disagree.

All of the events from which plaintiff would derive her equitable estoppel against the hospital arise from her interaction with Nurse McGovern during the two meetings in late 1987. Plaintiff charges that Nurse McGovern lulled her into delaying this lawsuit beyond the limitation period by allegedly telling her that (1) Lenox Hill Hospital was not to be blamed for plaintiff's HIV because no effective blood screening processes were known or available in June 1984, (2) telling anybody about her HIV infection would jeopardize her medical insurance coverage, especially with the hospital, (3) HIV infection may not, in and of itself, impair her health or her ability to live a normal life, and (4) she had to sign a general release (which she claims she did).

None of these allegations, which we must assume to be true for the purpose of this appeal, triggers an equitable estoppel in this case. The availability of the doctrine arises when a party, while knowing the true facts all along, makes a false representation or conceals a material fact with the intention that the other party will act thereon (*Unadilla Silo Co. v Ernst & Young*, 234 AD2d 754). The requirement of reasonable and detrimental reliance for estoppel in the context of medical negligence and/or malpractice was established in the seminal case of *Simcuski v Saeli* (44 NY2d 442, 450): "The preferable analysis * * * holds that due diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine [citation omitted]. Under this approach, which we endorse, the burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational."

Here, each of the representations fails to meet the four-pronged test in at least the following respects: (1) The record is barren of any showing that the statement about unavailability of blood screening in 1984 was false, and more particularly,

that Nurse McGovern knew it to be false. (2) Plaintiff never paid the slightest heed to the "don't tell anybody else" advice. She promptly placed herself under the care of a succession of other doctors expert in HIV/AIDS treatment, never sought further treatment at Lenox Hill, and confided her condition to "a long list" of friends. (3) The comment that HIV might not necessarily evolve into full-blown AIDS was probably true, but even if not, did not deceive plaintiff as to the gravity of her condition. At her deposition, plaintiff testified that when she learned in 1987 that she was HIV positive, she thought she was "going to die" as a result. (4) Plaintiff failed to raise an issue of fact as to the allegation of coerced release, which is firmly denied by the hospital. This charge is belied by the fact that in all the years since the alleged execution of the release, neither plaintiff nor her husband ever demanded a copy. Neither one is able to describe it in any way. More to the point, this purported document never became "operational" in the *Simcuski* sense because it was never mentioned or assessed affirmatively by the hospital, and plaintiff's decision to seek legal counsel was not reached until 1996, upon the onset of a severe tuberculosis infection, with the action formally commenced more than two years later. The existence vel non of the release played no part.

Ironically, *Simcuski*, so heavily relied upon by plaintiff and cited by the motion court, provides, in reality, a formidable obstacle to plaintiff's struggle to escape the Statute of Limitations. There, the defendant doctor was alleged to have negligently injured a cervical nerve of the patient in the course of removing a node, and thereafter lied about and concealed his error and, worse still, prescribed a course of hydrotherapy which was not only useless, but by the passage of time deprived the patient of any chance of recovery that competent medical help might have provided. All of this deceit continued until the Statute of Limitations ran out. Thus *Simcuski*, which began and ended with concealment, fully justified the application of equitable estoppel. In contrast, the case before us began with full disclosure to plaintiff of a possibly grave condition of which she had no knowledge, coupled with appropriate warnings for swift diagnosis and treatment which the hospital both urged and offered. Whatever shortcomings may, with the benefit of hindsight, be laid at Nurse McGovern's feet (and we do not perceive any), they cannot be causally linked to any legal remedy that plaintiff failed to seek in a timely fashion. Concur— Sullivan, P. J., Rosenberger, Williams, Wallach and Buckley, JJ.