BEATRICE PUTTER et al., Appellants, v NORTH SHORE UNI-
VERSITY HOSPITAL et al., Respondents. [807 NYS2d 624]—

In an action, inter alia, to recover damages for medical mal-
practice, the plaintiff Beatrice Putter, individually and as execu-
tor of the estate of Milton Putter, appeals from an order of the
Supreme Court, Nassau County (Mahon, J.), dated August 4,
2003, which granted the defendants' motion to dismiss the
complaint pursuant to CPLR 3211 (a) (5) as time-barred.

Ordered that the order is reversed, on the law, with costs, the
motion is denied, and the complaint is reinstated.

Milton Putter, who has died since the commencement of this
action, was diagnosed in July 1994 as suffering from hepatitis-C.
He and his wife, the plaintiff Beatrice Putter, commenced this
action in 2002, alleging that his condition was occasioned by
surgery performed in 1993 by the defendant Michael H. Hall at
the defendant North Shore University Hospital (hereinafter
North Shore). Based upon the two and one-half-year statute of
limitations with respect to a medical malpractice action (see
CPLR 214-a), the defendants moved, prior to the completion of
any discovery other than the depositions of the plaintiffs, to
dismiss the complaint pursuant to CPLR 3211 (a) (5) as time-
barred. In opposition, the plaintiffs asserted that the running of
the statute of limitations should be tolled by reason of the
defendants' conduct and that, at this juncture, facts necessary
to defeat the statute of limitations defense exist, but could not
be stated. The Supreme Court rejected the plaintiffs' argument
and granted the defendants' motion. We reverse.

The defendants established that this action was commenced
more than two and one-half years after the alleged act of medi-
cal malpractice (see Gravel v Cicola, 297 AD2d 620, 620-621
[2002]). Where, however, a patient fails to act within the limita-

tions period because the patient has relied upon material, false representations made by a physician with knowledge of the malpractice, the doctrine of equitable estoppel may be invoked to preclude the physician from asserting the statute of limitations as an affirmative defense (*see Simcuski v Saeli*, 44 NY2d 442 [1978]). Although the plaintiffs have not, on this record, established their entitlement to equitable estoppel, the court may deny a motion to dismiss the complaint where "facts essential to justify opposition may exist but cannot then be stated" (CPLR 3211 [d]). Because the plaintiffs here demonstrated a reasonable basis to believe that with additional discovery they may be able to develop facts sufficient to sustain their claim of equitable estoppel against the statute of limitations defense, the defendants' motion to dismiss the complaint should have been denied at this juncture.

Mr. Putter did not suffer from hepatitis-C prior to his quadruple bypass surgery in November 1993. The diagnosis was the result of regular blood tests performed shortly after the surgery by Dr. Leslie Cooperman and a subsequent liver biopsy by another physician. Mr. Putter testified that Dr. Cooperman concluded, unremarkably on these facts, that Mr. Putter must have contracted the disease as a result of the surgery, the same conclusion that was reached by Mr. Putter's three medically-educated children. Dr. Cooperman also told Mr. Putter that another patient of Dr. Hall, whose surgery had occurred two weeks before Mr. Putter's surgery, also had contracted hepatitis-C.

Based on his conversations with Dr. Cooperman, Mr. Putter contacted Dr. Bruce Farber, the chief of infectious diseases for North Shore. According to Mr. Putter, Dr. Farber's response to his inquiry was that there are a percentage of people who contract hepatitis-C from unknown sources and that Mr. Putter's was such a case. This was the state of the Putters' information at the time the statute of limitations ran.

Eight years later, in the spring of 2002, the New York State Department of Health and the Nassau County Department of Health informed Mr. Putter that he was one of 10 patients infected with hepatitis-C while in the cardiac service at North Shore during the period from 1993 to 2001, and that all but two of those patients had been treated by Dr. Hall. Three of those cases were known to North Shore but were not reported to the state and county departments of health until their investigation began. The investigation established that Dr. Hall had been infected in 1989 and that Mr. Putter's infection was epidemiologically related to that of Dr. Hall. Critically, correspondence from the Nassau County Department of Health to the New York

State Department of Health reflects that "the hospital infection control director and other appropriate individuals knew for several years that the surgeon had been infected with hepatitis C." The Putters commenced this action within months of learning this information.

The information provided by the departments of health was not, by itself, sufficient to defeat the defendants' motion. The documents from the departments of health that were submitted to the Supreme Court did not establish that Dr. Farber knew of Dr. Hall's condition and misrepresented to Mr. Putter that Mr. Putter's infection was of unknown origin. The information did, however, provide a reasonable basis to believe that with further discovery the Putters might be able to establish that Mr. Putter's infection was the result of the negligent failure of the defendants to know or deal with Dr. Hall's condition, that Dr. Farber knew of Dr. Hall's condition at the time he responded to Mr. Putter's inquiry and that, consequently, the defendants should be estopped from relying on the statute of limitations defense.

"[T]he issue of whether [a] defendant should be equitably estopped from asserting the Statute of Limitations as an affirmative defense to [a] plaintiff's complaint is not a question of law, but rather a question of fact, which should be fully developed and determined upon the trial of the action" (*Century Fed. Sav. & Loan Assn. of Long Is. v Net Realty Holding Trust*, 87 AD2d 858, 858). Here, the information upon which the plaintiffs relied was far more than the mere hope that further discovery would reveal the existence of triable issues of fact. The plaintiffs relied upon specific information developed through an investigation by the appropriate governmental authorities that, upon further discovery, might be sufficient to establish their entitlement to equitable estoppel. Since the plaintiffs satisfied the standard established by CPLR 3211 (d) for denial of the defendants' motion, they were entitled to avoid dismissal of the complaint at this stage of the proceedings and the defendants' motion should have been denied (*see Castagnazzi v Schlecker*, 129 AD2d 605 [1987]; *Schirano v Paggioli*, 99 AD2d 802 [1984]).

Unquestionably, a litigant who seeks to overcome a statute of limitations defense on the basis of equitable estoppel must have exercised due diligence in ascertaining the facts on which his or her claim is based (*see Estate of Boyle v Smith*, 15 AD3d 338 [2005], *lv granted* 5 NY3d 703 [2005]; *Gleason v Spota*, 194 AD2d 764 [1993]; *Marshall v Duryea*, 172 AD2d 726, 727 [1991]). The plaintiffs did so here. When the statute of limita-

tions period expired, the Putters knew only that Mr. Putter had been infected and that the likely source of that infection was his recent surgical procedure. This information was not, by itself, a basis for a lawsuit. The Putters' response to this information was to inquire of the hospital official most knowledgeable with respect to infectious diseases. His response, which consisted of the alleged misrepresentation, purported to resolve the matter, leaving no apparent avenue open for further inquiry. The defendants failed to suggest any other avenue by which the plaintiffs could have ascertained relevant information with respect to their claim, short of the discovery in this action that they have thus far been denied.

Thus, the defendants' motion to dismiss the complaint as time-barred should have been denied. Spolzino, Skelos and Fisher, JJ., concur.

H. Miller, J.P., dissents and votes to affirm the order appealed from, with the following memorandum, in which Santucci, J., concurs:

I respectfully dissent. In November 1993, Milton Putter, the decedent, underwent a quadruple bypass operation at the defendant North Shore University Hospital (hereinafter North Shore). The defendant Michael H. Hall was the surgeon. After his surgery, Putter followed up regarding his cardiac condition with Dr. Leslie Cooperman, with whom he underwent regular blood tests. That testing revealed elevated liver enzymes, and following a liver biopsy performed by yet another doctor in July 1994, Putter learned that he had hepatitis-C. Putter did not have that disease prior to his surgery. He did not receive a blood transfusion during the procedure. At his deposition, Putter testified that when he discussed his hepatitis-C condition with Dr. Cooperman in 1994, Dr. Cooperman told him that he (Dr. Cooperman) had another patient who underwent surgery with Dr. Hall two weeks after Putter's surgery, and had contracted hepatitis-C. Dr. Cooperman informed Putter that he must have contracted hepatitis-C through his surgery at North Shore.

Putter had three sons, all medical professionals. Putter's wife testified at her deposition that she and her husband spoke with their children about Putter's condition. The sons opined that Putter contracted the disease at North Shore.

When asked at his deposition whether he spoke with his sons about whether he contracted hepatitis-C at North Shore, his answer was: "I think I did and it seemed pretty obvious."

Despite the fact that, in 1994, it was "obvious" where Putter contracted hepatitis-C, he did not commence this action until August 2002, almost nine years after his surgery at North Shore.

Based on the foregoing facts, in my view, the Supreme Court correctly granted the defendants' motion to dismiss this action as time-barred. In opposition to the defendants' motion, the plaintiffs argued that the defendants should be equitably estopped from asserting the statute of limitations because the defendants allegedly misled Putter regarding the source of his hepatitis-C. For example, Putter testified at his deposition that, in 1994, upon learning he had hepatitis-C, he spoke with the chief of infectious diseases at North Shore, who told him that there are a percentage of people who contract the disease from "unknown sources." The plaintiffs further claimed that it was not until the year 2002 that they learned that Putter contracted hepatitis-C from Dr. Hall, thanks to recently-conducted testing by the New York State Department of Health (hereinafter DOH). In addition, according to the plaintiffs, DOH investigations purportedly revealed that North Shore personnel knew for years that an unspecified surgeon at that facility was infected with hepatitis-C. Nevertheless, the plaintiffs argue that North Shore willfully concealed the foregoing from Putter. The majority accepts the plaintiffs' argument, and concludes that they demonstrated facts necessary to establish a toll of the statute of limitations.

As applied in the medical malpractice context, to invoke the doctrine of equitable estoppel, upon which the majority relies, a party otherwise entitled to assert the statute of limitations as a defense must have actively concealed the facts and consequences of the malpractice *and* the injured party must have justifiably relied on the defendant's intentional misrepresentation, which reliance prevented him or her from discovering the malpractice or induced him or her to refrain from bringing a timely action (*see Simcuski v Saeli*, 44 NY2d 442 [1978]; *Fuchs v New York Blood Ctr.*, 275 AD2d 240 [2000]; *McIvor v Di Benedetto*, 121 AD2d 519 [1986]). The doctrine of equitable estoppel does not apply if the injured plaintiff possesses timely knowledge "sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations" (*McIvor v Di Benedetto, supra* at 520).

In my view, on this post-answer record in which the plaintiffs testified in painstaking detail about the state of their knowledge in 1994—eight years before they sued—neither the element of concealment nor the element of justifiable reliance was established. I recognize that normally, the issue of whether a defendant should be equitably estopped from asserting the statute of limitations as a defense is a question of fact that should

abide a trial (*see McIvor v Di Benedetto, supra* at 522). But this is one of those cases, like *McIvor v Di Benedetto*, where the admissions contained in the depositions negate essential elements of the doctrine as a matter of law.

Putter was questioned about the state of his knowledge in 1994. Putter opined that it was "pretty obvious" where he contracted hepatitis-C. I fail to see how he can claim concealment and justifiable reliance in the face of that admission. Putter may not have known enough in 1994 to prove his case. But the issue is whether he knew enough to interpose a nonfrivolous claim. In my view, he did. Accordingly, I would affirm the order appealed from.