**Janet and Joseph SACKMAN, Plaintiffs,**

v.

**LIGGETT GROUP, INC., Defendants.**

**No. 93 CV 4166 (ADS).**

United States District Court,
E.D. New York.

May 25, 1996.

---

**10.** See Joseph, *Sanctions: The Federal Law of* *Litigation Abuse,* § 28(B)(4), 2nd ed. (1994).

See also, 920 F.Supp. 357.

Humphrey, Farrington & McClain, P.C. by Kenneth B. McClain, Gregory Leyh, Independence, Missouri, Kelly, Sackman, Spollen & Upton by David Sackman, Greenlawn, New York, for Plaintiffs.

Kasowitz, Benson, Torres & Friedman by Michael M. Fay, Aaron H. Marks, New York City, for Defendant.

Debevoise & Plimpton by Steven Klugman, Harry Zirlin, New York City, for Intervenors Council for Tobacco Research, U.S.A., Inc.

Wachtell, Lipton, Rosen & Katz by Herbert M. Wachtell, Peter C. Hein, David M. Murphy, New York City, for Intervenors Philip Morris, Inc.

Chadbourne & Parke, New York City, for Intervenor Brown & Williamson Tobacco Corp.

Jones, Day, Reavis & Pogue, New York City, for Intervenor R.J. Reynolds Co.

Shook, Hardy & Bacon by Billy Randles, Kansas City, Missouri, for Intervenor Lorillard Tobacco Co.

## MEMORANDUM OF OPINION AND ORDER

SPATT, District Judge:

This lawsuit arises from the claims of the plaintiffs, Janet Sackman ("Sackman" or the "plaintiff") and her husband Joseph Sackman ("Joseph," collectively the "plaintiffs") against the defendant, Liggett Group, Inc. ("Liggett" or the "defendant") for personal injury, namely products liability and negligence, breach of warranty, fraud and loss of consortium. Specifically, the plaintiffs contend that Liggett, as a manufacturer of cigarettes unlawfully concealed information regarding the health risks associated with smoking. As a result, Sackman continued to smoke with the belief that cigarettes would not have any adverse effects of her health. Nevertheless, she developed lung cancer in 1990 as the result of her smoking.

Presently before the Court are several motions. The defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56 arguing that the plaintiffs' claims are time barred. In addition, the Court is confronted with two motions to intervene pursuant to Fed. R.Civ.P. 24. Philip Morris Incorporated ("Philip Morris"), Brown & Williamson Tobacco Corporation ("B & W"), R.J. Reynolds Tobacco Company ("RJR"), and Lorillard Tobacco Company ("Lorillard," collectively the "manufacturer-intervenors") seek to intervene in order to object to the March 19, 1996 Memorandum Opinion and Order of United States Magistrate Judge E. Thomas Boyle regarding whether certain documents sought by the plaintiffs in discovery are subject to the joint defense privilege, the attorney-client privilege and the attorney work-product privilege. The Council for Tobacco Research ("CTR") moves separately to intervene also for the limited purpose of objecting

**10**

to the Magistrate Judge Boyle's March 19, 1996 Opinion and Order. (The manufacturer-intervenors and the CTR are collectively referred to as the "intervenors.")

## I. Background

The plaintiffs are New York residents. The defendant is a Delaware corporation. In 1983 Janet Sackman was diagnosed with cancer of the larynx and surrounding lymph nodes. On March 30, 1983 Sackman's doctors removed her larynx and performed a tracheostomy and right thyroid lobectomy. When Sackman's doctors advised her that the cancer was caused by smoking, she stopped immediately and has not smoked since.

On June 5, 1984, the Sackmans commenced a medical malpractice lawsuit against her doctors for failure to diagnose her cancer earlier thereby permitting it to spread. This lawsuit was settled for the sum of $275,000.

In 1990, Sackman developed lung cancer, which was also, allegedly, the result of her smoking. According to the plaintiffs, the lung cancer was a separate and distinct injury from the laryngeal cancer. In support of their position, the Sackmans offer expert medical opinions which "clearly" state "that Mrs. Sackman's lung cancer was 'a new primary tumor in her lung,' and therefore was not a metastasis from her 1983 laryngeal cancer." *See, e.g.,* Affidavit of Kenneth B. McClain ("McClain Aff.") Exhs. 4, 6, 7 (offering expert medical opinions that Sackman's lung cancer is a second primary cancer rather than a metastatic extension of her prior laryngeal carcinoma). In this regard, the plaintiffs contend that the 1984 medical malpractice action addressed only the cancer in her larynx and had no relationship to her lung cancer.

On September 10, 1993, the plaintiffs filed this lawsuit. Liggett moves for summary judgment in its favor pursuant to Fed. R.Civ.P. 56 on the ground that the plaintiffs' claims are barred by their respective statutes of limitations. In support of its position, Liggett argues that the latest that the unlawful activity alleged could have occurred was in March 1983 when Sackman stopped smoking.

Philip Morris, B & W, RJR, Lorillard and the CTR have filed two motions to intervene pursuant to Fed.R.Civ.P. 24 for the purpose of objecting to the March 19, 1996 Memorandum Opinion and Order of Magistrate Judge Boyle granting discovery of certain documents which the intervenors claim are privileged. The Court will address Liggett's motion for summary judgment first because granting that motion would obviate the need to consider the motions to intervene.

## II. Discussion

### A. The summary judgment motion

#### 1. Summary Judgment Standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994), quoting, *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990), quoting, Fed.R.Civ.P. 56(e); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any

material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World*, 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed. R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Rem*, 38 F.3d 634 (2d Cir.1994).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994); *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 (2d Cir.1990).

### 2. *Liggett's motion*

The defendant moves for summary judgment arguing that the plaintiffs' claims are time barred. The plaintiffs have alleged a variety of claims with different statutes of limitations, and the Court will consider the claims consistent with their treatment under New York law.

### a. *Personal injury claims*

The plaintiffs allege claims for personal injury based on negligence and products liability. Such actions are governed by a three year statute of limitations. N.Y.Civ.Prac. 'L. & R. ("CPLR") 214(5). The issue here is not to determine the length of the relevant period, but rather when the plaintiffs' claims accrued.

Liggett argues that Sackman's claims could not have accrued later than March 1983 when she quit smoking, because that was the last day of her exposure to the allegedly toxic material, namely the cigarettes. As a result, her claims, which were brought ten years later, are untimely. On the other hand, the plaintiffs respond that they are suing based only on Sackman's lung cancer which was first diagnosed as the result of chest x-rays taken on September 13, 1990 and later confirmed by a CT scan performed on September 27, 1990. Accordingly, her Complaint, filed September 10, 1993, was brought within the prescribed time period.

At the outset, the Court states that for the purposes of this analysis, it will assume that Sackman's lung cancer was a separate injury that resulted from her smoking, rather than a secondary injury resulting from the spread of cancer from her larynx to her lungs. The Court makes this inference in favor of the plaintiffs, as it must when considering a summary judgment motion, based on the expert medical opinions attached to their supporting affidavit which the Court finds are sufficient to create a question of material fact as to this issue.

Since its decision in *Schmidt v. Merchants Desp. Transp. Co.*, 270 N.Y. 287, 200 N.E. 824 (1936) the New York Court of Appeals has repeatedly endorsed the "bright line rule" that in cases addressing personal injury based on exposure to toxic substances, the date of the injury for statute of limitations purposes is the "date when the toxic substance invades or is introduced into the body...." *Consorti v. Owens–Corning Fiberglas Corp.*, 86 N.Y.2d 449, 634 N.Y.S.2d 18, 20, 657 N.E.2d 1301, 1303 (1995), citing, *Snyder v. Town Insulation*, 81 N.Y.2d 429, 599 N.Y.S.2d 515, 615 N.E.2d 999 (1993); *Fleishman v. Eli Lilly & Co.*, 62 N.Y.2d 888, 478 N.Y.S.2d 853, 467 N.E.2d 517 (1984), *cert. denied*, 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 972 (1985).

In 1986 however, the New York legislature enacted CPLR 214–c, which provides:

2. Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the

body or upon property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

\* \* \* \* \* \*

6. This section shall be applicable to acts, omissions or failures occurring prior to, on or after July first, nine hundred eighty-six, except that this section shall not be applicable to any act or omission or failure:

(a) which occurred prior to July first, nineteen hundred eighty-six, and

(b) which caused or contributed to an injury that either was discovered or through the exercise of reasonable diligence should have been discovered prior to such date, and

(c) an action for which was or would have been barred because the applicable period of limitation had expired prior to such date.

CPLR 214–c(2), (6).

"This discovery rule was enacted to 'remed[y] a fundamental injustice in the laws of [New York] which has deprived persons suffering from exposure to toxic or harmful substances *from having the opportunity to present their case in court.*'" *Rothstein v. Tennessee Gas Pipeline Co.*, 87 N.Y.2d 90, 637 N.Y.S.2d 674, 677, 661 N.E.2d 146, 149 (1995), quoting, Governor's Mem. approving L.1986 ch. 682, 1986, N.Y.Legis.Ann. at 288 (emphasis in original). As a remedial statute, CPLR 214–c should be liberally construed. *Id.*, citing, 1 Weinstein–Korn–Miller, N.Y.Civ.Prac. ¶ 214–c.06 at 2–497. The purpose of section 214–c was "to replace the exposure rule [as set forth above], with a balanced and more equitable discovery accrual mechanism." *Id.* at 676, 661 N.E.2d at 148.

A comprehensive interpretation of the relevant subsections of CPLR 214–c was set forth by the Appellate Division in *Rothstein v. Tennessee Gas Pipeline Co.*, 204 A.D.2d 39, 616 N.Y.S.2d 902, 904 (2d Dep't 1994), *aff'd,* 87 N.Y.2d 90, 637 N.Y.S.2d 674, 677, 661 N.E.2d 146, 149 (1995):

Subdivision 2 changes the accrual date from the date of exposure to the date when the injury was discovered, or with reasonable diligence, should have been discovered. There is no reference to exposure. Giving this language its clear meaning, the statute is applicable to any action commenced after July 30, 1986, where the discovery post-dates the statute, regardless of the date of exposure....

Subdivision 6 supports that conclusion by specifically providing that CPLR 214–c is applicable to acts, omissions, or failures occurring prior to July 1, 1986. It then sets forth a three-pronged exception to the general rule of applicability enunciated in the statute. The date-of-discovery rule is not applicable where: (1) the act, omission or failure occurred prior to July 1, 1986, (2) the date of discovery was prior to July 1, 1986, and (3) the action was or would have been barred because the applicable Statute of Limitations had expired prior to that date. For the exception to apply all three criteria must be satisfied (*see, Silverman v. North Shore Energy Savers*, 202 A.D.2d 571, 609 N.Y.S.2d 250; 1 Weinstein–Korn–Miller, N.Y.Civ.Prac. ¶ 214–c.06).

*Rothstein,* 616 N.Y.S.2d at 904. Moreover, "[a]pplication of CPLR 214–c to a case where both the discovery and the commencement of the action post-dates the statute regardless of the date of exposure is in accord with both the literal reading of the statute and its remedial purpose." *Id.* at 905, citing, 1 Weinstein–Korn–Miller, at ¶ 214–c.06.

■ Initially, Liggett moves for summary judgment arguing that the exposure rule discussed in *Consorti* rather than CPLR 214–c applies to this case. Under CPLR 214–c(6), a claim will be governed by the "exposure" rule where the injury and its discovery pre-date July 1, 1986 and the period prescribed by the statute of limitations has elapsed prior to that date. Applying this rule, Liggett reasons that because Sackman discovered her laryngeal cancer in March 1983, which was the result of her smoking, and the three year statute of limitations ran prior to July 1, 1986, any future personal injury claims brought by Sackman based on her smoking are governed by the exposure rule, and as a

result, are time barred. The Court disagrees.

In recent years, the New York courts have recognized the "two injury rule" which provides that "[w]here the statute of limitations has run on one exposure-related medical problem, a later medical problem that is 'separate and distinct' is still actionable under New York [law]." *Braune v. Abbott Laboratories*, 895 F.Supp. 530, 555–56 (E.D.N.Y.1995) (Weinstein, J.), citing, *Fusaro v. Porter–Hayden Co.*, 145 Misc.2d 911, 915, 548 N.Y.S.2d 856 (N.Y.Cty.1989), *aff'd*, 170 A.D.2d 239, 565 N.Y.S.2d 357 (1st Dep't 1991); *see also Griffin v. Garratt–Callahan Co.*, 74 F.3d 36, 40 (2d Cir.1996) (applying two injury rule but finding that the plaintiff's two injuries were related and therefore time barred); *Sweeney v. General Printing Inc.*, 210 A.D.2d 865, 865–66, 621 N.Y.S.2d 132, 133 (3d Dep't 1994) (same). Under the two injury rule, "diseases that share a common cause may nonetheless be held separate and distinct where the presence of one is not necessarily a predicate for the other's development." *Braune*, 895 F.Supp. at 555–56, citing, *Fusaro*, 548 N.Y.S.2d at 859.

Consistent with the two injury rule, the plaintiffs contend that they are suing Liggett as a result of Sackman's lung cancer, which was diagnosed in 1990, and constituted a separate and distinct injury from the laryngeal cancer. Although the Court declines to comment on the merit of this argument, as stated above, there is sufficient medical evidence accompanying the plaintiffs' opposing papers to create a question of material fact as to this issue. *See* McClain Aff. Exhs, 4, 6, 7 (offering expert opinion that the possibility that Sackman's lung cancer was the result of a "primary tumor [as opposed to a metastasis of the laryngeal cancer] is relatively high"). Accordingly, Liggett's motion for summary judgment dismissing the plaintiffs' personal injury claims is denied. *See Bimbo v. Chromalloy Amer. Corp.*, 640 N.Y.S.2d 623, 625 (3d Dep't 1996) (affirming denial of a motion to dismiss based on a question of fact regarding whether second injury was separate and distinct from the first under the two injury rule).

In reaching this conclusion the Court notes Liggett's argument attempting to circumvent the "two injury rule" based on the New York Court of Appeals and Appellate Division decisions in *Dugan v. Schering Corp.*, 86 N.Y.2d 857, 635 N.Y.S.2d 164, 658 N.E.2d 1037 (1995), *aff'g*, 210 A.D.2d 974, 620 N.Y.S.2d 689 (4th Dep't 1994). In *Dugan*, the plaintiff's decedent was born in 1956. The decedent's mother took dienestrol, a synthetic estrogen drug, while she was pregnant with the decedent. In 1976 the decedent was diagnosed with cancer of the cervix and sustained a hysterectomy. No lawsuit was commenced at this time. In 1990 she redeveloped cervical cancer which caused her death in 1991. The plaintiff's husband then filed a lawsuit against the manufacturer of dienestrol. The Appellate Division affirmed the Supreme Court's dismissal of the action on statute of limitations grounds and rejected the plaintiff's contention that the 1990 cancer was a second, separate and distinct injury from the 1976 cancer as the plaintiff "offered no medical evidence to support that theory. Rather the unrebutted medical proof established that the cancer diagnosed in 1990 was a recurrence of the cancer diagnosed in 1976." *Dugan*, 620 N.Y.S.2d at 690. In affirming the Appellate Division, the New York Court of Appeals recognized that "Plaintiff's assertion that the cancer diagnosed in 1990 was a separate injury for statute of limitations purposes was properly rejected (*see Consorti v. Owens–Corning Fiberglas Corp.*, 86 N.Y.2d 449, 634 N.Y.S.2d 18, 657 N.E.2d 1301.)". *Dugan*, 635 N.Y.S.2d at 165, 658 N.E.2d 1037.

As the defendant correctly recognizes, in reaching its conclusion the New York Court of Appeals cited to *Consorti, supra*, which, as stated above, stands for the proposition that prior to the effective date of CPLR 214–c, accrual of personal injury claims in New York based on exposure to toxic substances is based on the date of exposure rather than the date of discovery of the injury. Liggett contends that this citation to *Consorti* means that "in an action [like Sackman's] that involves pre-Section 214–c exposure *and* pre-Section 214–c injury, the 'two injury' analysis—a product of Section 214–c—is not applicable to the exposure claim."

Liggett contends that because Sackman suffered a pre-Section 214–c exposure and *a* pre-Section 214–c injury, namely the laryngeal cancer, the two injury rule is inoperative. The defendant reaches this conclusion by relying entirely on the *Dugan* decision's citation to *Consorti* in spite of the fact that *Dugan* contains no express analysis of the two injury rule. The Court declines to endorse the defendant's position for two reasons.

First, this argument was expressly rejected by the Court in *Fusaro*, which "is often credited with establishing the two-injury rule in New York." *Braune*, 895 F.Supp. at 556. In *Fusaro*, the court held that reading CPLR 214–c(6) to require a pre-July 1, 1986 exposure and *any* related pre-July 1, 1986 injury to place the case outside the statute's discovery rule would "negate [section 214–c's] salutary purpose." *Fusaro*, 548 N.Y.S.2d at 858. While the defendant correctly recognizes that the New York Court of Appeals has not expressly embraced the holding in *Fusaro*, the Second Circuit, at least one federal court in this district, and intermediate appellate courts in New York have done so. *See, e.g., Griffin*, 74 F.3d at 40; *Braune*, 895 F.Supp. at 555–56; *Sweeney*, 621 N.Y.S.2d at 133.

In *Griffin*, the Second Circuit applied the two injury rule and affirmed the district court's decision granting summary judgment on the basis of untimeliness because the evidence offered established that the injuries at issue were not separate and distinct. In applying the rule the court made no mention of *Consorti* or *Dugan*. While the absence of this analysis may be explained because the issue was never raised, the Court is nevertheless unwilling to modify or depart from a test readily applied by the Second Circuit without intervening authority to the contrary.

Second, even if the Second Circuit had never rendered its decision in *Griffin*, the Court finds that there is an alternative reading of the *Dugan* decisions which is more plausible and does not require any implicit modification or limitation on the two injury rule. The New York Court of Appeals' *Dugan* decision cites *Consorti* for the proposi-

tion that the plaintiff's separate injury claims in that case were properly rejected. However, as the Appellate Division recognized, the trial court dismissed the case because of the lack of medical evidence presented by the plaintiff in opposition to the defendants' summary judgment motion and in support of his two injury argument. Accordingly, the court found that the 1990 cancer was related to the 1976 cancer. Given that these two cancers were related, the plaintiff's injuries met the three requirements set forth in CPLR 214–c(6), namely that his injury was discovered prior to July 1, 1986 and the statute of limitations had run by that date. As a result, his claims fell outside section 214–c(2)'s discovery rule. Accordingly, the plaintiff's claims were governed by the exposure rule set forth in *Schmidt* and reiterated in *Consorti*, and *Dugan*'s cause of action, which dated back to a 1955 exposure, was time barred.

Before leaving this issue, the Court also rejects Liggett's claims that the Court's interpretation renders CPLR 214–c a "revival" statute contrary to legislative intent. The defendant argues that permitting the Sackmans' personal injury claims to continue would render CPLR 214–c a revival statute in violation of the recent New York Court of Appeals decision *Rothstein v. Tennessee Gas Pipeline, supra*. In *Rothstein* however, the court recognized a revival statute as one which revives claims that were barred as of the statute's effective date. In this case, assuming that Sackman's lung cancer was a second primary injury, the plaintiff's cause of action was not time barred in 1986 because she had suffered no injury at that time under the two injury rule. Indeed, if the Court accepted the defendant's reading of *Rothstein* it appears that the two injury rule would be nullified because any time the first injury was barred under the *Schmidt* exposure rule, permitting a second cause of action to go forward, based on a separate and distinct injury discovered after the effective date of CPLR 214–c, would constitute a revival of a stale claim. The *Rothstein* court never addressed this eventuality and the Court declines to read such a drastic conclusion into the Court of Appeals decision, espe-

cially when the Second Circuit has already applied the rule, and because the *Rothstein* decision affirmed an Appellate Division decision which cited *Fusaro* with approval. *See Rothstein v. Tennessee Gas Pipeline Co.*, 616 N.Y.S.2d at 905, *aff'd*, 87 N.Y.2d 90, 637 N.Y.S.2d 674, 661 N.E.2d 146 (1995).

Based on these considerations, the Court finds that *Dugan* does not modify the two injury rule and, as stated above, Liggett's motion for summary judgment dismissing the plaintiffs' personal injury claims based on negligence and products liability is denied.

### b. *Breach of warranty claim*

■ The defendant also moves for summary judgment with respect to the plaintiff's breach of warranty claim. The Sackmans claim that Liggett breached its warranty when it issued advertisements stating that an individual's health will not be adversely affected by smoking cigarettes. The parties agree that this issue is governed by N.Y.U.C.C. § 2–725, *see Rothstein*, 616 N.Y.S.2d at 905, which provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when the tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Because four years has elapsed since the last "tender of delivery" of cigarettes was made to Sackman, the plaintiffs claim that the warranty alleged extended to future performance. Whether the plaintiffs have established a warranty for future performance, thereby invoking the discovery rule provided in N.Y.U.C.C. § 2–725, constitutes a question of fact within the province of the jury not the Court. *Weiss v. Herman*, 193 A.D.2d 383, 597 N.Y.S.2d 52, 53 (1st Dep't 1993).

Liggett argues however, that regardless of whether the alleged breach of warranty is

one for future performance, the Sackmans' claims should be dismissed. Specifically, Liggett asserts that Sackman discovered the violation of an alleged warranty when she developed laryngeal cancer in 1983. Accordingly, the four year statute of limitations ran in March of 1987. The Court agrees.

The key to analyzing an alleged breach of warranty is determining when the breach was discovered or should have been discovered. N.Y.U.C.C. § 725(2); *see also Warren W. Scott & Son v. American Buildings Co.*, 93 A.D.2d 987, 461 N.Y.S.2d 639, 640 (4th Dep't 1983); *Parazek v. New England Log Homes, Inc.*, 92 A.D.2d 954, 460 N.Y.S.2d 698, 699 (3d Dep't 1983).

In considering a breach of an express warranty, there must first be a specific warranty which "rest[s] on the 'dickered' aspects of the individual bargain." *See* N.Y.U.C.C. § 2–313, Official. Comm 1. According to the First Amended Complaint, the alleged express warranty was that "smoking Chesterfield cigarettes did not present any significant health risks." Accordingly, a breach of this express warranty would occur when the plaintiffs discovered or should have discovered that smoking did pose a "significant health risk."

Framing the inquiry in this manner reveals that the plaintiffs' breach of warranty claims are time barred. Sackman was diagnosed with laryngeal cancer in March 1983. There is no doubt that such a condition constitutes a significant health risk. She was further advised that her cancer was the result of her smoking. Accordingly, any warranty that smoking would not effect her health was breached at this time. As a result any claim based on this alleged express warranty which was commenced after March 1987 is untimely.

In reaching this conclusion the Court notes the plaintiffs' reliance on *Smith v. Rochester Telephone Business Marketing Corp.*, 786 F.Supp. 293, 308 (W.D.N.Y.1992), *aff'd*, 40 F.3d 1236 (2d Cir.1994). The Sackmans argue that under *Smith*, a contract claim involving "future performance accrues each time that a breach in the contractual obligation occurs." Applying *Smith* the plain-

tiffs assert that a new cause of action accrues every time "a" breach occurs, namely each time Sackman suffers another ailment as a result of her smoking. In the Court's view, the plaintiffs misread *Smith*, which addressed the distribution of benefits over a period of time. In that case the court recognized that "[i]n New York, claims under a contract which calls for performances over a period of time accrue each time that a breach of the contractual obligations occurs." *Id.* In this case however, there is no contract obligating Liggett to continuing performance. Assuming the existence of an express warranty, the warranty accompanied the sale of cigarettes which ended in March 1983. While the Sackmans might contend that the warranty remained effective until the breach could be discovered, *see Pazarek*, 460 N.Y.S.2d at 699, there is no support for an argument that once the warranty is breached, the claim remains viable ten years later based on a continuing breach of the same warranty. *See Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir.1996) (rejecting plaintiff's claim of warranty as to future performance based on sale of cigarettes and finding breach of warranty claim barred on statute of limitations grounds). Accordingly, as stated above, the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the plaintiffs' breach of warranty claim is granted.

### c. *The fraud claims*

Finally, Liggett argues that the plaintiffs' fraud claim is also time barred. Sackman alleges that she was defrauded by the defendant's "misrepresent[ation] that smoking Chesterfield was healthy, safe and beneficial to the smoker. Chesterfield advertisements included statements from purportedly reputable doctors and other authorities stating that (a) no adverse health affects would occur after smoking Chesterfields, (b) Chesterfield cigarettes were 'Best For You,' and (c) Chesterfield cigarettes were 'Much Milder' than other cigarettes." Liggett moves for summary judgment arguing that these fraud claims are untimely.

The statute of limitations for fraud is contained in CPLR 203(g) and CPLR 213(8). Section 213(8) provides that:

[t]he following actions must be commenced within six years ... an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

Section 203(g) provides:

where the time within which an action must be commenced is computed from the time when facts were discovered of from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.

In short, an action based on fraud must be "commenced either within six years of the time the fraud was committed, or within two years of the time the fraud is or should have been discovered, whichever is longer." *Plaza v. Wisser*, 211 A.D.2d 111, 626 N.Y.S.2d 446, 451 (1st Dep't 1995).

Reviewing this standard, the Court finds that the plaintiffs claims for fraud are also time barred. To establish a cause of action for fraud, the plaintiffs must establish that: (1) there was a material, false misrepresentation, (2) made with knowledge of its falsity, (3) intent to defraud, (4) that the plaintiff reasonably relied upon, and (5) causing the plaintiff injury. *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). Applying these elements, the latest that Liggett could have defrauded Sackman was March 1983 when she last smoked a cigarette. Accordingly, under CPLR 213(8) Sackman's fraud claim would be timely only if brought before March 1989, six years later. If the Court applies the two years from discovery rule under CPLR 203(g), even when reading the facts in the light most favorable to the plaintiffs and concluding that the fraud was not discovered until September 1990, when her lung cancer was diagnosed, the fraud claim would have to

be commenced no later than September 10, 1992. Since Sackman is unable to meet even this 1992 deadline, which is more than nine years after the alleged misrepresentations, her fraud claim is time barred.

In reaching this conclusion the Court notes Sackman's reliance on *City of New York v. Lead Indus. Ass'n, Inc.*, 190 A.D.2d 173, 597 N.Y.S.2d 698 (1st Dep't 1993). In *Lead Indus.*, the plaintiffs brought a fraud cause of action based on lead paint manufacturers' alleged misrepresentations and concealment of known risks associated with their products. Although the opinion is not entirely clear, the Appellate Division affirmed the denial of the defendants' motion to dismiss based on statute of limitations grounds apparently reasoning that the defendants misrepresentations and concealments were so pervasive that the plaintiffs could not have acquired knowledge of the fraudulent activity allegedly committed until after the statute of limitations had expired.

While the Court acknowledges the existence of a possible exception to the statute of limitations in a fraud case where the defendants are able to conceal their fraudulent conduct until the statute of limitations has run, such an exception is inapplicable in this case. To qualify for such a tolling of the statute of limitations, the plaintiffs would have to establish that their delay in bringing their fraud claim was the result of their inability to acquire the relevant information to bring such a claim. Here however, even if the Court assumes that the Sackmans' fraud claim would have been viable had it been brought as late as September 10, 1992, the plaintiffs have offered no explanation for the delay from September 10, 1992 until September 10, 1993. There is no proof that during this period that Sackman obtained any new information or any other circumstances that would justify tolling the statute of limitations. Accordingly, the plaintiffs' fraud claim is time barred and the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing this claim is granted.

#### d. *The derivative claims*

Liggett also moves for summary judgment in its favor with respect to Joseph Sackman's derivative claims for "punitive damages, con-

sortium, medical monitoring and fear of cancer." The defendant contends that because all of Janet Sackman's underlying claims should be dismissed, so should the claims of Joseph. *See Griffin*, 74 F.3d at 40. However, since the Court has denied Liggett's motion with respect to the plaintiffs' personal injury claims, the motion with respect to the derivative claims is denied as well.

### B. *The motions to intervene*

In addition to Liggett's motion for summary judgment, the Court must also determine two motions to intervene: the first filed on behalf of the CTR, and the second on behalf of Philip–Morris, B & W, RJR and Lorillard. Both motions are to intervene for the limited purpose of objecting to the March 19, 1996 Memorandum Opinion and Order issued by United States Magistrate Judge E. Thomas Boyle regarding the discovery of certain documents.

#### 1. *The March 19, 1996 Opinion and Order*

On March 19, 1996, Magistrate Judge Boyle issued his decision regarding the "applicability of several privileges asserted by Liggett with regard to [123] documents related to scientific research projects into medical issues relating to tobacco use conducted by the Council on Tobacco Research, Special Projects." Mem.Op. & Ord., 920 F.Supp. at 357, 359–60. According to the decision, the CTR is a New York corporation which funds "allegedly independent unbiased scientific research relating to [the] causal nexus between tobacco use and health." Mem.Op. & Ord., 920 F.Supp. at 360. As recently as 1994, the CTR has reiterated its mission during congressional hearings to research the effect of tobacco and related health issues. *Regulation of Tobacco Products: Hearings Before the Subcomm. on Health and the Environment of the Comm. On Energy and Commerce*, 103d Cong., 2d Sess. 103–342 (April 28, May 17, 26, 1994) (testimony of John F. Glenn, Chairman, Council for Tobacco Research, USA). The CTR is the successor to the Tobacco Industry Research Committee ("TIRC"), formed by several tobacco companies in 1954. Although Liggett was not one

of the founders of TIRC, it became a member in 1964.

The CTR operates by funding research projects through research grants and awards. At oral argument before Magistrate Judge Boyle, two methods of funding were addressed in detail. First, is the CTR's "grant-in-aid" program, under which various proposals are reviewed by the CTR's Scientific Advisory Board ("SAB"). The SAB is constituted of independent scientists from various fields of study. Second is its "special projects" program, in which the tobacco companies themselves determine, on the advice and recommendation of counsel, whether to approve a request for funding. The SAB does not participate in the special projects funding.

The plaintiffs seek discovery of 123 documents relating to Liggett's participation in the CTR's special projects program. Magistrate Judge Boyle found that these documents fall within three general categories. First, are documents to or from counsel relating to specific scientific projects, either conducted or recommended to be conducted under CTR special projects. Second are documents of minutes and agenda of meetings of various general counsel to the tobacco companies in which the CTR special projects or a particular project is discussed. Third are documents relating to meetings held by tobacco company executives wherein CTR special projects were discussed. In addition, there are two miscellaneous documents involving a description of various methods of product research and public relations and annual budget expenditures by Liggett for research and other expenses. These documents also refer to CTR special projects.

Liggett asserted that the documents are protected under the attorney-client, attorney work-product and joint defense privileges. The Sackmans responded that the privileges are inapplicable, and that the even if the privileges do apply, the documents are nevertheless discoverable under the crime-fraud exception. Specifically, the plaintiffs argued that although CTR was held out as an independent entity dedicated to impartial research to serve the public interest, it is actually an arm of the tobacco product manufacturers used for public relations purposes to undermine any casual links found between tobacco use and health problems. In support of this position, the plaintiffs rely on the role of counsel in determining which projects to fund and the absence of SAB participation in the decision making process with respect to the special projects.

Magistrate Judge Boyle notes that the 123 documents at issue were also before the federal district court in New Jersey in a separate lawsuit. See Haines v. Liggett Group, Inc., 140 F.R.D. 681 (D.N.J.), vacated, 975 F.2d 81 (3d Cir.1992). In Haines a special master was appointed to review over 1500 documents relating to the CTR and the tobacco companies named as defendants. The special master determined that the documents were protected by the attorney-client privilege and the Magistrate Judge confirmed this determination further finding that the documents did not fall within the crime-fraud exception. This decision was reversed by the district court on the ground that the documents were part of public relations fraud using the reputation of the CTR as an independent board of scientists to legitimize the results of the research projects supporting the conclusion that there is no causal link between smoking and health problems. This decision was ultimately vacated because the district court considered information outside the record. Haines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir. 1992).

■ After reviewing the documents in camera, Judge Boyle determined that they were not protected by the attorney-client privilege, the attorney work-product privilege or the joint defense privilege. The attorney-client privilege applies to confidential communications between an attorney and his or her client during the course of employment. United States Postal Serv. v. Phelps Dodge Refining Corp., 852 F.Supp. 156, 160 (E.D.N.Y.1994), citing, Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir.1984). Judge Boyle found that the privilege did not apply because Liggett "failed to demonstrate that the documents at issue relate to the rendition of legal advice or

legal services. The documents involve communications by tobacco company executives[,] ... in-house counsel and outside counsel relating to CTR Special Projects research." Mem.Op. & Ord., 920 F.Supp. at 365. Further, the documents

demonstrate that the attorneys were serving a function other than that of a legal advisor. Counsel to the tobacco companies were functioning in a scientific, administrative, or public relations capacity in taking the action they did. The role delegated to the attorneys was one that could have been performed by the [SAB], a doctor or a scientist, or a tobacco company executive.

Mem.Op. & Ord., 920 F.Supp. at 365.

Moreover, even if the documents would have ordinarily been entitled to the attorney-client privilege, the compelling public policy interests underlying concerns regarding public health is sufficient to override the privilege. Accordingly, he ruled that the attorney-client privilege does not apply.

■ Judge Boyle also rejected Liggett's joint defense privilege arguments. The joint defense doctrine serves to protect the confidentiality of communications between one party and the attorney for another party where a joint defense effort or strategy has been agreed upon and undertaken by the parties. *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y.1996), citing, *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989); *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir.1989). The court reasoned that because the underlying communications were not subject to the attorney-client privilege, they do not acquire a privileged status as the result of communications being jointly undertaken.

■ Judge Boyle also rejected the defendants' attorney work-product claims. The work-product privilege applies to documents prepared primarily in anticipation of litigation. *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). In reaching this determination, the court reasoned that the documents were prepared for multiple reasons, including to disseminate findings and opinions based on the CTR's research, which is consistent with the public relations motivation underlying the special projects financed by the CTR.

■ Finally, Judge Boyle concluded that even if any of the privileges were applicable, the 123 documents at issue would nevertheless have to be disclosed under the crime-fraud exception. Under this exception the proponent must establish: (1) probable cause to believe that a crime or fraud has been attempted or committed; and (2) probable cause to believe that the communications were in furtherance thereof. *United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989); *In re Richard Roe, Inc.*, 68 F.3d 38, 39 (2d Cir.1995). In reviewing the documents in camera, Judge Boyle found "prima facie evidence sufficient to establish probable cause: (1) that a fraudulent purpose existed in Liggett's use of CTR Special Projects, and (2) that the documents at issue furthered the fraud." Mem. Op. & Ord., 920 F.Supp. at 368. Specifically the court found that the CTR, and its predecessor the TIRC, portrayed their purpose as engaging in independent research to ascertain whether tobacco products caused health risks. In reality however, the CTR special projects were used for research in support of the tobacco industries economic interests. Indeed the "TIRC and CTR, ... along with the tobacco companies and their counsel, were willing and knowing participants in this scheme to mislead the public." Mem.Op. & Ord., 920 F.Supp. at 368. Support for this finding is based on Liggett's attempt to invoke the attorney work-product privilege, which necessarily requires that the documents be made in anticipation of litigation. Accordingly, even if the documents were protected under one of the privileges discussed above, Judge Boyle ruled that they should be disclosed under the crime-fraud exception.

### 2. *Intervention*

The CTR and Philip Morris, B & W, RJR and Lorillard move to intervene both as of right, or in the alternative with permission of the Court, for the purposes of filing objections to Magistrate Judge Boyle's March 19, 1996 Opinion and Order.

At the outset the Court expressly denies the plaintiffs' request that these motions be referred to Magistrate Judge Boyle. Rather than engage in a lengthy academic exercise to determine whether a motion to intervene should be considered dispositive, under Rule 4 of the Eastern District's Standing Orders of the Court on Effective Discovery in Civil Cases, the Court exercises its discretion to decide these motions.

### a. *Intervention as of Right*

Intervention as of right is governed by Fed.R.Civ.P. 24. The Second Circuit recognizes four elements necessary to grant a motion to intervene as of right under Fed.R.Civ.P. 24(a)(2):

> (1) a timely application, (2) asserting an interest relating to the property or transaction which is the subject of the action (3) where the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is not adequately represented by existing parties.

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994), citing, *United States v. New York*, 820 F.2d 554, 556 (2d Cir.1987); *Restor–A–Dent Dental Lab., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir.1984). In order to grant a motion to intervene as of right, all of the requirements of Fed.R.Civ.P. 24(a)(2) must be satisfied. *Pitney Bowes*, 25 F.3d at 70. When considering a motion to intervene, the courts must accept the applicant's well pleaded allegations as true, making no determination as to the merits of the issues in dispute. *See Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir.1984); *United States v. AT & T*, 642 F.2d 1285, 1291 (D.C.Cir.1980).

### (i) *Timeliness*

The circumstances generally considered when determining whether a motion to intervene is timely are: how long the applicant had notice of the interest before it made the motion to intervene; the prejudice resulting from any delay; the prejudice to the applicant if the motion is denied; and any other unusual circumstances. *Pitney Bowes*, 25 F.3d at 70; *United States v. Country Club Garden Owners Ass'n, Inc.*, 159 F.R.D. 400, 403 (E.D.N.Y.1995) (Spatt, J.). The issue of timeliness is for the sound discretion of the trial court. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973); *Dow Jones & Co., Inc. v. United States Dep't of Justice*, 161 F.R.D. 247, 251 (S.D.N.Y.1995).

Applying this flexible standard, the Court finds that the motions to intervene are timely. Both motions are made for the limited purpose of objecting to Judge Boyle's March 19, 1996 Opinion and Order and were filed within ten days of the court's decision. While the plaintiffs may argue that the putative intervenors may have unnecessarily delayed their efforts to enter this lawsuit, the Court finds that because these Rule 24 motions are for the limited purpose of objecting the Judge Boyle's March 19, 1996 decision, any delay is negligible.

Further, the Court finds that the Sackmans will not be prejudiced by granting the motions. As stated above, the intervention is for the limited purpose of objecting to Judge Boyle's decision. If the motions were denied, the Court would still have to address Liggett's objections. Further, in an effort to avoid delaying these proceedings the putative intervenors have already filed their objections, the consideration of which are contingent upon the Court's decision with respect to these motions. Accordingly, the Court finds that the only possible prejudice the plaintiffs might face is the added expense of answering the extra objections, a condition the Court finds an insufficient basis to deny the Rule 24 motions.

### (ii) *Disposition of an interest which the intervenors would otherwise be unable to protect*

For the sake of brevity, the Court will address together both the second and third elements under Fed.R.Civ.P. 24(a)(2), the existence of a sufficient interest, and whether disposition of that interest would effectively impede the putative intervenors' ability to protect that interest. Among the interests that satisfy these criteria are injury to reputation, *see Penthouse Int'l, Ltd. v.*

*Playboy Enterprises, Inc.*, 663 F.2d 371, 373, 392 (2d Cir.1981), need to protect the attorney-client privilege, *see In re Katz (Jamil v. United States)*, 623 F.2d 122 (2d Cir.1980), and need to protect the attorney work-product privilege. *See United States v. AT & T*, 642 F.2d 1285, 1290–92 (D.C.Cir.1980), citing, *Reisman v. Caplin*, 375 U.S. 440, 445, 84 S.Ct. 508, 511–12, 11 L.Ed.2d 459 (1964); *see also In re Grand Jury Proceedings*, 735 F.2d 1330, 1331 (11th Cir.1984) (recognizing that a district court should allow intervention by a client in the first instance as soon as the attorney-client privilege issue is raised); *In re Grand Jury Proceedings*, 604 F.2d 798, 801 (3d Cir.1979) (recognizing intervention to assert both the attorney-client and work product privileges) (collecting cases). As the D.C. Circuit stated in *AT & T*:

> To be protected by means of intervention [as of right], the interest must be a legal interest as distinguished from interests of a general and indefinite character.... Privileges such as the work product privilege satisfy this definition of legal interest and can be directly lost through the operation of a discovery order. Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard.

*AT & T*, 643 F.2d at 1292.

Applying this wide range of precedent, the Court finds that the intervenors have alleged a sufficient interest to warrant the limited intervention they seek. While the intervenors claims are based on the joint defense privilege, these arguments derive from claims of attorney-client and work-product privileges, which, as stated above, satisfy the requirements of Fed.R.Civ.P. 24(a)(2). The CTR also claims a sufficient interest based on the potential adverse impact that Judge Boyle's decision might have on its reputation as an independent body. While the Court would be inclined to grant CTR's request for limited intervention under either Fed. R.Civ.P. 24(a)(2), or Rule 24(b), based on this alleged reputation injury, it need not reach this issue. Both the CTR's and the tobacco products manufacturers' interest in protecting its privileged communications are sufficient to support their motions.

With respect to the ability to protect the alleged privileged communications, the Court finds that once the documents are disclosed in this litigation, the putative intervenors will have no way of protecting the communications contained therein in future lawsuits even if they were otherwise deemed privileged. As a practical matter, denying the Rule 24 motions on this ground would force the movants to risk losing confidential documents, without them ever being afforded an opportunity to protect that information. The Court is unwilling to endorse such an outcome.

In addition, the CTR recognizes that as a defendant in twenty-two other litigations regarding the effect of tobacco use on health related illnesses, the plaintiffs in those cases would be able to use Judge Boyle's Opinion and Order as persuasive authority for the proposition that the allegedly privileged communications at issue here should nevertheless be disclosed. Because the Second Circuit has recognized that the stare decisis effect of a court's decision is sufficient to demonstrate the requisite impairment of an interest to support a motion to intervene, the Court finds another adequate basis upon which to grant the putative intervenors' motion. *See Oneida Indian Nation of Wisconsin*, 732 F.2d at 265; *New York Public Interest Research Group, Inc.*, 516 F.2d 350, 352 (2d Cir.1975).

In reaching this conclusion, the Court rejects the plaintiffs' arguments that the intervenors claims are too "remote or contingent" to merit intervention. In support of their position, the Sackmans cite *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 88 (2d Cir.1986). In *H.L. Hayden* however, where the putative intervenor was not attempting to claim a privilege, the Second Circuit explicitly distinguished *United States v. AT & T*, 642 F.2d 1285 (D.C.Cir.1980). As stated above, the court in *AT & T* held that claims of attorney work-product privilege constitute a sufficient interest to support a motion to intervene.

### (iii) Adequate representation of interests

The final criterion under Fed.R.Civ.P. 24(a)(2) is whether the putative intervenors interests are already adequately represented in the ongoing litigation. In general, Rule 24(a)(2) requires a showing that the representation of his interest "may be" inadequate, and that the burden of making that showing is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). However, where the same overall objective exists for the putative intervenor and one party in the lawsuit, the applicant must overcome the presumption of adequate representation. *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978).

Applying these standards, while Liggett shares a similar interest to the putative intervenors with respect to this lawsuit, the Court finds that the movants have alleged inadequate representation sufficient to satisfy Fed.R.Civ.P. 24. In both motions the intervenors seek to protect allegedly confidential communications which might support the plaintiffs' allegations of unlawful conduct. However, the CTR has an added incentive to object to Judge Boyle's ruling regarding knowing participation in fraudulent conduct as the CTR is supposedly an independent organization responsible granting funds to a wide range of scientific research projects addressing the effect of tobacco on the public's health. Accordingly, any tarnish on the CTR's reputation for independence might affect the public trust in the projects it funds and eventually erode its support. As a result, the CTR's goals should be more focused on the repercussions of Judge Boyle's decision as opposed to the outcome of this lawsuit in general.

Taking a different tack, the tobacco companies raise issues of Liggett's competence and willingness to mount a vigorous defense. In support of this position, they argue that one week before Judge Boyle issued the March 19, 1996 Opinion and Order, they were advised by means of a press release that Liggett had settled lawsuits including a class action identified in the parties papers as the "*Castano* class action" and several lawsuits brought by State Attorneys General.

Apparently, the settlements were the result of "secret" negotiations dating back to 1995. Liggett never advised the manufacturer-intervenors of its intent to settle these cases. According to the tobacco companies, the settlements will not result in payments to any smokers and were motivated by the desire of Liggett's parent corporation, Brooke Group, Ltd. "to increase its chances of acquiring control of Reynolds [RJR] through a proxy battle." In addition, the settlement contains certain unspecified provisions which require that Liggett "cooperate" with the plaintiffs in those actions, although the contours of that cooperation is unknown. Accordingly, the manufacturer-intervenors reason that Liggett may have a somewhat different agenda with respect to its litigation tactics than the other tobacco companies.

Further, the defendant's counsel has just withdrawn its representation of Liggett. As a result, the other tobacco companies are concerned about the new counsel's ability to mount an adequate defense. Considering these factors together, while it appears that Liggett and the putative intervenors do share a common goal with respect to this litigation, the Court concludes that the movants have satisfied their burden and established that their interests may not be adequately represented with respect to objecting to Magistrate Judge Boyle's March 19, 1996 Opinion and Order.

### 3. Permissive intervention

Permissive intervention is governed by Fed.R.Civ.P. 24(b), which provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: ... when an applicant's claim or defense and the main action have a question of law or fact in common.

Fed.R.Civ.P. 24(b)(2). The district court's discretion under Rule 24(b)(2) is broad. *See, e.g., New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir.1992) ("The district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2)"); *H.L. Hayden Co.*, 797 F.2d at 89 ("The district court's discretion under Rule 24(b)(2) is very broad"). In analyzing Rule 24(b)(2), the

words "claim" or "defense" are not to be read in a technical sense, but only require some interest on the part of the applicant. *Dow Jones & Co.*, 161 F.R.D. at 254. The principal consideration set forth in the Rule is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Brennan*, 579 F.2d at 191; *In re Joint E. & S. Dist. Asbestos Litig.*, 878 F.Supp. 473, 511–12 (E. & S.D.N.Y.1995). Other relevant factors include the nature and extent of the intervenors' interest, whether their interests are adequately represented and whether the applicants for intervention will contribute to a full development of the issues presented for adjudication. *Brennan*, 579 F.2d at 191–92.

██ Weighing these factors the Court finds that even if the putative intervenors were not entitled to intervene as of right for the limited purpose of objecting to Magistrate Judge Boyle's March 19, 1996 Opinion and Order, their motions for permissive intervention should nevertheless be granted in the alternative. The movants seek to intervene for the limited purpose of objecting to Judge Boyle's March 19, 1996 Opinion and Order concerning the discoverability of certain documents which allegedly address fraudulent conduct, not only of the defendant Liggett, but also the putative intervenors, and their attempts to suppress evidence of the adverse effects that tobacco use may have on an individual's health. Moreover, this case contains complex issues with potential significant implications for the tobacco industry. In addition this litigation is at a relatively early stage, with discovery issues still pending. As a result, even if intervention pursuant to Rule 24(a)(2) was inappropriate, the Court would grant the motion to intervene pursuant to Fed.R.Civ.P. 24(b)(2).

However, having granted the motion to intervene, and having granted Liggett's motion for summary judgment with respect to the breach of warranty and fraud claims, the Court now vacates Magistrate Judge Boyle's March 19, 1996 Opinion and Order so that the court may reconsider the effect of this Court's summary judgment decision on the various discovery issues. In vacating Judge Boyle's earlier decision, the parties are directed to focus their arguments on the remaining personal injury claims. Further, the Court permits the intervenors to participate in any new proceedings before Judge Boyle for the limited purpose of determining whether the 123 documents at issue are discoverable.

### III. *Conclusion*

After reviewing the parties submissions, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that defendant Liggett's motion for summary judgment pursuant to Fed. R.Civ.P. 56 is granted dismissing the Complaint with regard to the claims for fraud and breach of warranty and denied with respect to the plaintiffs' personal injury claims based on negligence and products liability and derivative claims; it is further

ORDERED, that the motions of CTR and Philip Morris, B & W, RJR and Lorillard to intervene pursuant to Fed.R.Civ.P. 24 with respect to whether the 123 documents reviewed by United States Magistrate Judge E. Thomas Boyle in camera are discoverable is granted; it is further

ORDERED, that the March 19, 1996 Opinion and Order issued by Magistrate Judge Boyle is vacated so that the issues of discoverability may be revisited in light of this Court's rulings as set forth above; it is further

ORDERED, that the intervenors be permitted to participate in any further proceedings before Magistrate Judge Boyle regarding these issues; and it is further

ORDERED, that the objections to Magistrate Judge Boyle's March 19, 1996 Opinion and Order are withdrawn without prejudice and with leave to refile after Magistrate Judge Boyle has revisited this issue.

SO ORDERED.