**THADDEUS SINEISE and VICTORIA SINEISE, Plaintiffs**

**v.**

**TEXACO CARRIBEAN, INC. and SUN TRANSPORT, INC., Defendants**

**TEXACO CARRIBEAN, INC., Defendant, Third-Party Plaintiff**

**v.**

**SUN TRANSPORT, INC., Third-Party Defendant**

Case No. 96-101

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 6, 1998

Vincent Colliani, Esq., and Bruce Cole Esq., (Hunter, Colliani, Cole & Turner), *for Plaintiff*

Mary Faith Carpenter Esq., and Adriane Dudley, (Dudley, Clark & Chan), *for Defendant and Third-party Plaintiff*

Carol Hurst, Esq., and Chad Messier, Esq., (Dudley, Topper & Feurzeig), *for Third Party Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on defendant and third-party plaintiff's appeal of an order of the United States Magistrate Judge for the District of the Virgin Islands compelling an investigative report. This Memorandum and Order affirms in part the magistrate judge's order.

## INTRODUCTION

This action stems from an explosion at a storage tank at the facility owned and operated by Texaco Carribean, Inc. ["Texaco"] on St. Thomas, U.S. Virgin Islands. Plaintiff and two other men, all employees of a sub-contractor, were severely injured while using a torch to cut holes in the storage tank on July 31, 1995.

On the day of the accident, Texaco's local manager contacted its outside counsel, Adriane Dudley, Esquire. Attorney Dudley directed that a report be prepared, which was done by Texaco's regional environmental health and safety coordinator, Scott Koehnk. By August 12, Koehnk supplied Dudley with a 12-page report ["draft report"]. Dudley finalized this report by January 25, 1996 ["final report"].

369

Meanwhile, plaintiffs filed suit on November 6, 1995. Texaco in turn filed suit against Sun Transport, Inc. ["Sun"] on October 25, 1996, and plaintiff also sued Sun directly in December 1996. Sun's employees had flushed the tank with seawater in preparation for the work done by plaintiff and Texaco and plaintiff alleges, inter alia, that Sun did so in a negligent fashion.

Sun sought production of the report and its preliminary drafts prepared by Texaco, which was resisted. Sun ultimately moved to compel its production. In a memorandum and order dated January 9, 1998, the magistrate judge granted the motion, ordered the production of both the draft report and the final report, allowing redaction of any legal advice or opinion redacted from the latter. Texaco appealed, claiming both attorney-client privilege and attorney work product. This Court heard argument on January 23, 1998.

## ATTORNEY-CLIENT PRIVILEGE

■ This Court has subject matter jurisdiction premised on diversity of citizenship. As such, this Court applies the substantive law of the Virgin Islands. Further, FEDERAL RULE OF EVIDENCE 501 provides that privileges are determined in accordance with state, or in this case territorial, law.

Title 5, section 854 of the Virgin Island's Code provides the general rule on lawyer-client privilege: "communications found by the judge to have been between a lawyer and his client in the course of that relationship and in professional confidence, are privileged . . . ."

■ The magistrate judge based his decision on what would amount to a finding that the communication was a compilation of facts not "in the course" of a legal relationship: that the reports were produced for a business purpose. Further, the magistrate judge found that there is no basis to conclude that but for the privilege the facts would not have been disclosed, and that the reports are directly related to an internal investigation. "The reports do not reveal a confidential communication from Texaco or impart legal advice from the attorney." Memorandum at 8. This Court agrees with these factual findings and affirms the magistrate judge's ruling that neither report is protected by the attorney-client privilege.

370

The attorney work product doctrine protects from disclosure "mental impressions, conclusion, opinions, or legal theories of an attorney" obtained or prepared in anticipation of litigation. FED. RULES OF CIV. PRO. 26(b)(3).

In determining whether a document is prepared in anticipation of litigation, a court must look to "whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1224, 1229 (*citing* 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2024 at 198 (1970)).

### The Draft Report

■ The magistrate judge's finding that "the threat of litigation alone was not the underlying reason for the preparation of the investigative report," Memorandum at 12, might be construed to place too high a burden on those seeking the work product protection. However, such can be read to be in conformity with the standard most often used: the "primary" motivating factor. In any case, this Court agrees that litigation was not the primary motivating factor in the production of the report. As the magistrate judge determined, Texaco's operations manuals direct that the local entity "should" conduct an investigation and prepare an internal investigative report, which "though not mandatory, is advisory and the Court believes, a prudent business purpose." Memorandum at 13 (*citing Sackman v. Liggett Group, Inc.*, 920 F. Supp. 357, 365, (E.D.N.Y. 1996) vacated on other grounds by 167 F.R.D. 6, reinstated by 173 F.R.D. 358 (*Liggett* failed to establish that the primary reason for the creation of the documents was to assist in on-going or anticipated litigation)).

Further, the timing of the report bolsters the conclusion that the primary reason for the investigative report was not anticipation of litigation.

> Some recent cases have suggested the need for objective facts establishing an identifiable resolve to litigate prior to

the investigative efforts resulting in the report before the work product doctrine becomes applicable. While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation.

*Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)(citations omitted).

■ The mere likelihood of litigation is not sufficient; some specific lawsuit must be contemplated. *Miles v. Bell Helicopter*, 385 F. Supp. 1022 (N.D. Ga. 1974). In a case resulting from a helicopter crash, the court denied protection to reports of the helicopter manufacturer, which were created "not in response to a particular claim advanced by any individual, but merely on the contingency that litigation might well arise from such a helicopter crash." *Id.* at 1033. The *Miles* court adopted a standard of substantial probability of a suit as enunciated in *Duplan Corp. v. Deering Milliken, Inc.*, 61 F.R.D. 127 (D.S.C. 1973):

> The probability that some particular litigation will occur must be substantial before a document may be deemed to be "in anticipation of litigation" . . . . Therefore, the mere fact that a particular action . . . has a likelihood of bringing about litigation at some point in time in the future is not a sufficient showing. The probability must be substantial and the commencement of litigation must be imminent. Phrased another way, some particular litigation must be contemplated at the time the document is prepared.

*Id.* at 130; cited by *Miles*, 385 F. Supp. at 1033.

This Court agrees with the magistrate judge that the draft report was not created in anticipation of litigation as required by Rule 26(b)(3).

**The Final Report**

While the first draft was not prepared in anticipation of litigation, the preparation of the final report very likely was. Plaintiffs filed their complaint November 6, 1995, but the report was not

finalized until January 25, 1996. This fact bolsters Texaco's claim that the final report should be protected under the attorney work product doctrine.

■ Further, Texaco's outside counsel created the final report by inserting various changes to the draft report. These modifications could very well disclose the thought processes and strategy of trial counsel. Therefore, the final report is properly protected. The magistrate judge's ruling to the contrary is clearly erroneous and contrary to law, and will be reversed.

## CONCLUSION

The order of the magistrate judge requiring production of the draft report is affirmed. His order requiring production of the final report is reversed. An appropriate order has been entered.

ENTERED this 6th day of March, 1998.