**UNITED STATES of America, Plaintiff,**

**State of New York and Barbara Debuono, M.D., as Commissioner of the New York Department of Health, Plaintiffs–Intervenors,**

v.

**CITY OF NEW YORK and New York City Department of Environmental Protection, Defendants.**

No. 97 CV 2154(NG)(SG).

United States District Court, E.D. New York.

May 4, 1998.

Deborah B. Zwany, Asst. U.S. Atty. Brooklyn, NY, for U.S.

Gordon J. Johnson, Asst. Atty. General, New York City, for State of New York.

Steven Stein Cushman, Asst. Corporation Counsel, New York City, for City of New York.

Daniel A. Ruzow, Whiteman Osterman & Hanna, Albany, NY, for City of Yonkers.

Michael S. Rogin, Sive Paget & Riesel, P.C., New York City, for Yorktown.

John C. Klotz, New York City, for Croton Watershed Clean Water Coalition.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

This action has been brought pursuant to Section 1414(b) of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300g–3(b). The United States of America, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges that the City of New York ("the City") and the New York City Department of Environmental Protection ("NYC-DEP") are in continuing violation of the Surface Water Treatment Rule ("SWTR"), 40 C.F.R. §§ 141.70–141.75, promulgated under Section 1412 of SDWA, 42 U.S.C. § 300g–1.

The State of New York and the Commissioner of the New York State Department of Health have intervened as plaintiffs with the consent of the United States and the City. Presently before the court are the motions of three other entities—the City of Yorktown, New York ("Yorktown"), the City of Yonkers, New York ("Yonkers") and the Croton Watershed Clean Water Coalition, Inc. ("the Coalition"), an organization consisting of environmental groups and individual water rate payers and taxpayers from New York City and the Croton watershed counties of Westchester and Putnam—to intervene as defendants pursuant to Federal Rule of Civil Procedure 24. For the reasons stated below, these motions are denied.

## BACKGROUND

### A. The Croton Watershed.

According to the complaint, the City obtains water for a population of approximately 9 million people from a number of surface water sources found outside of the City's borders. Among these are the twelve surface reservoirs and three controlled lakes that make up the Croton watershed portion of the City's water supply. In recent years the Croton watershed has normally accounted for about tell percent of the City's water consumption.

In 1991, a City report entitled *New York City's Long–Range Water Quality, Watershed Protection and Filtration Avoidance Program* concluded that the safety of water from the Croton watershed should be ensured through filtration treatment. In 1992, the City entered into a stipulation with the New York State Department of Health pursuant to which the City acknowledged that it was required by federal and state law to build a filtration plant for the Croton watershed. The stipulation further provided that the City would have the final design of the plant completed by July 1995 and that construction of the plant would be completed by

July 1999. To date, however, the City has not completed the design of the plant, has not chosen a site for the plant and has not commenced construction.

On January 13, 1991, the EPA, acting pursuant to powers granted it by SDWA, issued a determination to the effect that SWTR required the City to undertake to provide for filtration and disinfection of water from the Croton watershed. Although the City was informed by the EPA of its rights to challenge the determination through administrative procedures, such a challenge was not undertaken.

This action was filed on April 24, 1997. The United States alleges that, because the City has to date failed to filter and disinfect water from the Croton watershed, it has been in violation of the terms of the EPA's determination since mid–1993. In its prayer or relief, the United States seeks to have the City enjoined from further violations of SDWA and SWTR and the issuance of an order compelling the City to site, design, construct and operate a filtration plant for the Croton watershed on an expeditious schedule. The United States also seeks the imposition of civil penalties against the City for violations of SDWA and SWTR.

## B. The Proceedings.

The United States, the State and the City have indicated a willingness to attempt to resolve this action through the negotiation of a consent decree, and I have referred them to Magistrate Judge Steven J. Gold, who has been supervising the parties' negotiations. Any proposed agreement must be filed with the court at least thirty days before it is entered, during which time the United States "will receive and consider, and file with the court, any written comments, views or allegations relating to the proposed judgment." 28 C.F.R. § 50.7.

## C. The Motions To Intervene.

The three proposed intervenors have filed separate motions for intervention. Yorktown declares that it has a vital interest in this action "because there is a high probability that if the plaintiffs prevail, Yorktown may become the site of an enormous water filtra-

tion and disinfection facility ... which will result in significant harm to the residents of Yorktown." Consequently, Yorktown seeks to intervene in order to prevent a "wholly arbitrary and capricious" effort "to foist a filtration plant on a community outside of [the City's] political boundaries."

Similarly, Yonkers seeks to intervene because of the possibility that *it* will be the site of a filtration plant for the Croton watershed. Specifically, Yonkers asserts that the site for the filtration plant may be on property owned by New York City at the Hillview Reservoir, located in the City of Yonkers. Thus, echoing Yorktown, Yonkers declares that, absent intervention, it "faces the prospect of being forced to accept a filtration plant, even though other sites under consideration may well be more cost effective, adversely affect fewer people, and provide greater benefits to a larger number of users of the New York City water supply."

Both Yorktown and Yonkers also assert that they will be damaged no matter where the Croton watershed filtration plant is built, because certain residents and businesses in both municipalities obtain water from the Croton watershed. They anticipate that the cost of building a filtration plant, regardless of where it is sited, will likely be passed on to Croton watershed ratepayers, including, perhaps disproportionately, their residents.

Finally, the Coalition characterizes itself as "a membership corporation that includes consumers of drinking water from the Croton watershed including people of color from New York City, water rate payers, taxpayers and residents of New York City and the watershed counties of Westchester and Putnam, and many other individuals interested in the preservation of water quality in the Croton watershed." The Coalition seeks to intervene in order to assert the position— which it contends is not being asserted by any of the existing parties—that "filtration of the Croton water supply is not only unnecessary, but dangerous to consumers, fiscally wasteful and irresponsible, and destructive of any concept of enlightened planning." They also claim that the over-development that filtration will encourage will have effects that

will fall disproportionately upon minority communities. Claiming that the decision to filter water from the Croton watershed was reached in violation of statutorily imposed administrative procedures, the Coalition seeks relief in the form of "the dismissal of this action and the remand of this controversy to the conduct of appropriate administrative processes."

## DISCUSSION

### A. Intervention as of Right.

#### 1. General Considerations.

Federal Rule of Civil Procedure 24(a) provides two avenues pursuant to which a party may seek to intervene in a pending action as a matter of right:

> 1) when a statute of the United States confers an unconditional right to intervene; or 2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

While Rule 24(a)(1) appears self-explanatory, courts have generally declined to read federal statutes expansively in order to find unconditional rights of intervention. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1906 at 247 (1986). As for intervention pursuant to Rule 24(a)(2), "an applicant must 1) timely file an application, 2) show an interest in the action, 3) demonstrate that the interest may be impaired by the disposition of the action, and 4) show that the interest is not protected adequately by the parties to the action. Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir.1996) (citations omitted; emphasis in original).

 When considering an application for intervention, the court must accept the applicant's well pleaded allegations as true and make no determination as to the merits of the issues raised. *See Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y.1996). However, Rule 24(a)(2) may not be used to initiate what is essentially a new lawsuit. Rather, "(i)ntervenors must take the pleadings in a case as they find them." *Washington Elec. Cooperative, Inc. v. Mass. Municipal Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990). "[T]he applicant must have an interest in the proceeding that is direct, substantial, and legally protectable. The applicant's interest in the lawsuit must not be remote from the subject matter of the proceeding, or contingent upon the occurrence of a sequence of events." *American Lung Assn. v. Reilly*, 141 F.R.D. 19, 21 (E.D.N.Y.) (citation omitted), *aff'd.*, 962 F.2d 258 (2d Cir.1992); *see also Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 875 (2d Cir.1984) (intervention denied where interest of proposed intervenors would be implicated only if verdict returned in plaintiff's favor).

It is also important to maintain the distinction between two easily confused concepts, standing to sue and the right of intervention. The proposed intervenors, especially the Coalition, have directed the court's attention to cases that have applied broad notions of standing to sue so as to afford interested parties the right to initiate actions involving environmental issues. *See, e.g., United States v. S.C.R.A.P.*, 412 U.S. 669, 686, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

 But standing to sue and the right of intervention are by no means the same thing. To possess standing means that "a party has a sufficient stake *in an otherwise justiciable controversy* to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (emphasis supplied). That is, the question of standing is one of whether a party has a sufficient interest to *initiate* an action that is otherwise justiciable in all respects. Where "(t)he existence of a case or controversy [has] been established as between [the existing parties], there [is] no need to impose a standing requirement upon the proposed intervenor." *U.S. Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir.

1978). On the other hand, "[i]ntervention is concerned with *something more* than standing to sue: it is concerned with protecting an interest which practically speaking can only be protected through intervention in the current proceeding." *Norwalk Core v. Norwalk Bd. of Ed.,* 298 F.Supp. 208, 210 (D.Conn. 1968) (Timbers, C.J.) (quotation omitted; emphasis supplied). Thus, the interest that the proposed intervenors have to show here is that they have a direct, substantial, and legally protectable interest in *this* suit. *See, e.g., United States v. 36.96 Acres of Land,* 754 F.2d 855, 859 (7th Cir.1985) (noting the "qualitative difference between the 'interest' which is sufficient to bring an action [under a statute] and the 'direct, significant, legally protectable interest required to intervene' "), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986). With these principles in mind, I now turn to the motions before me.

### 2. Yorktown and Yonkers.

Yorktown and Yonkers do not assert an unconditional statutory right to intervene pursuant to Rule 24(a)(1). With respect to Rule 24(a)(2), it is not necessary to consider whether Yonkers and Yorktown meet each of the four criteria for intervention as of right because, while both municipalities may very well have considerable interests at stake with respect to the eventual construction of a filtration plant for the Croton watershed, they clearly fail to meet the requirement of demonstrating that they have an interest *in this action* within the meaning of the Rule. To illustrate why this is so, it is useful to consider *Cronin v. Browner,* 898 F.Supp. 1052 (S.D.N.Y.1995).

In *Cronin,* various environmental groups brought suit under the Clean Water Act, 33 U.S.C. § 1365, to compel the EPA to issue regulations regarding "cooling water intake structures," which are employed primarily in the utilities industry. At a point at which the existing parties to the action had entered into a proposed consent decree, a consortium of utility companies sought to intervene, contending that "as the real targets of any regulation of cooling water intake structures, they [had] a legally protectable interest—as that term has been defined under Rule 24—in 'the

extent and parameters of any obligation imposed ... upon EPA to develop regulations regarding the location, design construction, and capacity of cooling water intake structures.' " 898 F.Supp. at 1061.

Leave to intervene was denied. The court acknowledged that the utility companies unquestionably had an interest in any cooling water structure regulations that the EPA might issue. However, that interest was not at stake in the *Cronin* litigation. Rather, that suit was initiated in order to compel the EPA to initiate its rulemaking process with respect to the regulation of cooling water structures, a process in which the utility companies would be afforded the right to participate in order to press their regulatory views. In other words, the *Cronin* litigation

> will not decide the *substance* of a proposed regulation until all information-gathering has been completed and all information (including public comments) has been fully and fairly considered.... The consent decree permits EPA to determine that, based upon public comment and further reflection, the proposed regulation should be modified, or should not be issued at all. Proposed Intervenors raise *the pure conjecture* that [the consent decree], ... might someday be interpreted to require EPA to in fact issue regulations.

898 F.Supp. at 1062 (emphases supplied).

Just as the plaintiffs in *Cronin* brought an action seeking to compel EPA to initiate rulemaking procedures, here the United States has brought an action that seeks to compel the City to initiate compliance with EPA's January 13, 1993 determination that a filtration plant be constructed for the Croton watershed. And, just as the litigation at issue in *Cronin* would not decide the substantive outcome of the rulemaking process, so this action will not resolve any of the substantive issues in which Yorktown and Yonkers claim an interest. That is, this action will not decide *where* a filtration plant for the Croton watershed will be built, nor will it decide how the construction of the plant will be financed. *Compare United States v. 27.09 Acres of Land,* 737 F.Supp. 277, 289 (S.D.N.Y.1990) (condemnation action concerning land within municipality that U.S.

had chosen as future site of mail processing plant; municipality's motion to intervene granted).

Put simply, Yorktown and Yonkers' expressed interests in not being the site of the filtration plant for the Croton watershed, and in not having their residents be unduly burdened by the costs of the plant's construction, are not at issue in this litigation. These issues will be determined in other proceedings separate and distinct from this action. At oral argument, counsel for the City stated that the City, independent of this action, is currently considering no fewer than seven sites for the location of the filtration plant and that "it will be months if not years before a final site is selected." As part of this process, the City has declared that it will, pursuant to State environmental statutes, prepare an environmental impact statement. As in *Cronin*, Yorktown and Yonkers will have opportunities to press their interests in the site during and after the site selection process and, if and when any rate changes are proposed, their interests in rates, in the appropriate regulatory and judicial forums.

In sum, while Yorktown and Yonkers certainly may have interests with respect to the filtration of water from the Croton watershed, they have not met their burden of demonstrating that these interests entitle them to be parties in this action, as opposed to future proceedings in which their interests will be directly engaged. *See Washington Elec., Inc. v. Mass. Municipal Wholesale Elec. Co.*, 922 F.2d at 97 ("An interest that is ... contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy [Rule 24]"). Their motions to intervene are accordingly denied.

### 3. The Coalition.

In its motion to intervene pursuant to Rule 24(a)(2), the Coalition does not claim that the interests of its membership are at stake in the current action so much as it asserts that those interests were illegitimately disregarded in the course of the administrative determinations that form the background of this action. That is, the Coalition contends that, in reaching decisions in 1992 and 1993 that

water from the Croton watershed be filtered, the EPA, the State and the City violated, respectively, federal, state and municipal law. Specifically, the Coalition argues that the 1992 stipulation entered into by the State and the City, and the EPA's January 13, 1993 determination that called for filtration, were accomplished in violation of statutory notice provisions, which purportedly would have allowed groups such as the Coalition to challenge the decision to construct a filtration plant, and in violation of statutory provisions requiring the preparation of comprehensive environmental impact statements, which would have detailed the effects of filtration. Thus, the Coalition characterizes the present action as one in which "[t]he EPA has invoked the jurisdiction of this court to enforce a determination that is the result of a deeply flawed process." That being the case, the Coalition argues that the interests ·of its members in opposing the filtration of water from the Croton watershed cannot be adequately represented in this action because all of the current parties "are culpable in the blundering path towards filtration and the unloosing of unfettered development in the watershed that threatens the vital interests" of Coalition members.

The question is whether these interests are properly raised in this action. This is an action to enforce a 1993 administrative determination. The Coalition argues the merits of its position regarding the nature of the process by which that determination was made. The United States urges that the time is long past for challenging the filtration determination and that all applicable statutes of limitation have long since expired. The merits and timeliness of the Coalition's arguments regarding statutory violations in the course of prior administrative proceedings are simply not at issue in this action and, as a proposed intervenor, the Coalition cannot make them an issue. *See, e.g., Washington Elec. Cooperative, Inc. v. Mass. Municipal Wholesale Elec. Co.*, 922 F.2d at 97; *American Lung Assn. v. Reilly*, 141 F.R.D. at 21.

This conclusion is not altered by the Coalition's argument that, since this is an action brought under Section 300g–3 of SDWA, I have broad powers to fashion relief and

should therefore allow the Coalition to intervene to press for the relief it seeks. Specifically, the Coalition points to Section 300g–3(b), which states that "(t)he court may enter, in an action brought under this subsection, such judgment as protection of public health may require ." This direction to consider the public health, the Coalition suggests, is an open-ended mandate to revisit the issue of the process pursuant to which the decision to filter water from the Croton watershed was reached.

▪ Under Section 300g–3(b), I am afforded the power to fashion relief *specifically for the purpose of ensuring compliance:*

> The court may enter ... such judgment as protection of public health may require, taking into consideration the time necessary to comply and the availability of alternative water supplies; ... and, if the court determines that there has been a violation of the regulation or schedule or other requirement with respect to which the action has been brought, the court may, ... impose on the violator a civil penalty....

I am thus charged by the statute to determine whether SDWA, or a regulation promulgated thereunder, has been violated and, if so, to fashion relief appropriate to redress such violation. That the Court has the power to fashion relief, to ensure compliance with SDWA, does not expand the right to intervene to include claims that go beyond the pleadings of the existing lawsuit. The Coalition's assertion that *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), supports its view is incorrect. That case—which did not concern the question of intervention—dealt with a district court's power to fashion relief under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* While the Supreme Court upheld the district court's discretion, in fashioning relief, to withhold an injunction, the Coalition misses the point that such discretion, as here, was a "grant of jurisdiction *to ensure compliance with a statute.*" 456 U.S. at 313 (emphasis supplied).

Insofar as the Coalition challenges potential rate changes, their motion is subject to the same analysis set forth above as to Yorktown and Yonkers. *See, supra,* pp. 377–379.

▪ Finally, the Coalition contends that it may intervene pursuant to Rule 24(a)(1) because the "private attorney general" provision of SDWA, 42 U.S.C. § 300j–8, affords it an unconditional statutory right of intervention. This argument is without merit. Section 300j–8(b)(1)(A) provides that a person may commence an action to redress violations of SDWA; and Section 300j–8(b)(1)(B) provides that a person may not commence an action to enforce SDWA if the United States "has commenced and is diligently prosecuting a civil action in a court of the United States to require compliance with [SDWA], but in any such action in a court of the United States any person may intervene as a matter of right." However, intervention pursuant to this provision "is limited to government initiated actions that could have been brought by the individual but for the government action." *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 979 (2d Cir.1984). Here, the United States has indeed initiated an action to enforce SDWA, but the Coalition does not seek to intervene for the purposes of such enforcement. On the contrary, it seeks to intervene as a defendant, and does not seek relief under SDWA, but seeks to negate the process pursuant to which the United States has determined that the City is in violation of the statute. The Coalition's right to intervene can be no greater than its right to initiate a suit in its own right as a private attorney general, and that right is limited to actions seeking to enforce compliance with SDWA. *See United States v. Metropolitan Dist. Commission,* 679 F.Supp. 1154, 1158 (D.Mass.1988) (Federal Water Pollution Control Act action), *aff'd,* 865 F.2d 2 (1st Cir. 1989).

### B. Permissive Intervention.

▪ Federal Rule of Civil Procedure 24(b) provides in relevant part as follows:

> Upon timely application anyone may be permitted to intervene in an action: ... when an applicant's claim or defense and the main action have a question of law or fact in common.

The court's discretion under Rule 24(b) is broad, *see, e.g., New York News, Inc. v. Kheel,* 972 F.2d 482, 487 (2d Cir.1992), and the principal considerations governing its exercise are "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Sackman v. Liggett Grp., Inc.,* 167 F.R.D. at 23. Since, as detailed above, the claimed interests of the proposed intervenors, although broadly related to the subject matter of this action, are extraneous to the issues before the court, I find that intervention would indeed unduly delay the adjudication of the rights of the existing parties to the action. Intervention pursuant to Rule 24(b) is therefore denied.

## CONCLUSION

The motions of the City of Yorktown, the City of Yonkers and the Croton Watershed Clean Water Coalition to intervene in this action are DENIED.

**SO ORDERED.**